PHILLIP A. BAKER, BAR ID #169571
pbaker@bknlawyersc.com
JENNIFER L. STONE, BAR ID #325493
jstone@bknlawyers.com
BAKER, KEENER & NAHRA, LLP
633 West 5th Street, Suite 5500
Los Angeles, California 90071
Telephone: (213) 241-0900/Facsimile:  (213) 241-0990

MARCI LERNER MILLER, BAR ID # 162790
marci@milleradvocacy.com
CHRISTINA N. HOFFMAN, BAR ID #161932
choffman@milleradvocacy.com
MILLER ADVOCACY GROUP
1303 Avocado Avenue, Suite 230
Newport Beach, California 92660
Telephone: (949) 706-9734/Facsimile: (949) 266-8069

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Plaintiff J.P. on behalf of her minor son R.P., and all others similarly situated; THE NATIONAL CENTER FOR FAIR & OPEN TESTING doing business as FAIRTEST, a Massachusetts corporation; A.K., individually and on behalf of all others similarly situated; R.G. on behalf of her minor son J.G., and all others similarly situated; Plaintiff M.S. on behalf of her minor daughter Z.S., and all others similarly situated, | Case No.: |
| Plaintiffs, | NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT |
| vs. | DEMAND FOR JURY TRIAL |
| EDUCATIONAL TESTING SERVICES (ETS), a New York corporation; THE COLLEGE ENTRANCE EXAMINATION BOARD, a New York corporation, doing business as THE COLLEGE BOARD; and DOES 1 through 50, inclusive, | |
| Defendants. | |

///

899-5656-0001

Plaintiffs, Plaintiff J.P. on behalf of her minor son R.P. and all others similarly situated; THE NATIONAL CENTER FOR FAIR & OPEN TESTING ("FairTest"); A.K., individually and on behalf of all others similarly situated; R.G. on behalf of her minor son J.G., and all others similarly situated; Plaintiff M.S. on behalf of her minor daughter Z.S., and all others similarly situated (collectively, "Plaintiffs"), allege and plead as follows:

## **INTRODUCTION**

1.    Plaintiffs bring this suit against Defendants to recover the damages owed to them and others similarly situated and for injunctive relief as a result of the Defendants' failure to allow access to and failure to administer its Advanced Placement ("AP") program properly and without prejudice.

2.    The College Board is involved at every level of the college preparation, testing, admissions, financial aid, and placement process.  It is the leading player in the higher education industry responsible for the fates of millions of high school students every year, deciding who will be recruited, who will apply, who will be accepted, who will receive financial aid, and who will be able to afford college and other postsecondary opportunities.  The Educational Testing Service ("ETS") is responsible for the development, administration, and scoring of College Board's assessments, including AP exams.

3.    AP is a program offered by the College Board that offers college-level courses and examinations to high school students.  Colleges and universities frequently grant placement and course credit to students who obtain passing scores on their AP examinations.  The length of time each student will spend in college, their curriculum, and how much they pay to attend college are factors heavily influenced by College Board and the AP opportunities available to students.  The College Board claims that AP courses and examinations also favorably impact college admissions decisions by demonstrating to admissions officers that a student is prepared for college-level work.

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

AP courses strengthens a student's high school transcript and help students qualify for scholarships.

4.    In March of 2020, schools around the world moved to distance learning due to the COVID-19 pandemic.  The College Board was faced with the decision of cancelling its popular and profitable AP program for the year, postponing the exams, or offering them at home to students.  The College Board made the decision to offer the AP exams to students at home but with significant structural changes.

5.    The College Board was immediately made aware by numerous sources, including counselors, educators, advocates and families, that there were serious concerns that the at-home AP exams would not be fair to students who have no computer, access to Internet or quiet workspaces from which to work, or to under-resourced students in general.  Even as the test began, questions remained about the availability and applicability of legally required accommodations for students with disabilities, the fair access to connectivity for all students, test security, and score comparability.

6.    Counselors, educators, advocates, and families immediately reached out to The College Board to make them aware of their serious concerns with the at-home AP format's likely impact on students who have no computer, access to Internet or quiet workspaces from which to work, or on under-resourced students in general. Even as the test began, questions remained about the availability and applicability of legally required accommodations for students with disabilities, connectivity, test security, and score comparability.

7.    The College Board acknowledged that these issues existed, but it did not change its policies to address them.  On May 14, 2020, after 3 full days of at-home AP exams, the College Board admitted that there was a measurable failure rate in uploading exams, and it attempted to change its policies going forward.  The College Board's President, David Coleman acknowledged in an email that, "we can't control the conditions in students' homes."  Technical problems with the digital versions of the AP

exams caused and continue to cause tremendous angst for high school students and their parents during this already stressful time.

8.      Before this year, high school students took their AP exams at school during the regular school day hours in a controlled and regulated environment where they could ask for assistance if necessary.  The College Board acknowledged that it knew moving the exams home may exclude some students from testing at all, stating that, "We recognize that the digital divide could prevent some low-income and rural students from participating."  The College Board moved the AP exams to students' homes under the present conditions despite this acknowledgement.  In doing so, the College Board knowingly discriminated against under-resourced students, disabled students, and students in remote locations, and it failed to honor its commitments to students and their families.

9.      After one day of testing, it became clear that the College Board and ETS had failed to fairly, competently, or equitably administer the AP exams.  The students who relied on AP scores for the financial benefits of college placement and credit experienced technical glitches, timing issues, and a heightened level of anxiety and distress.  Reports of anywhere between 5% and 20% of examinees were unable to submit their responses through the at-home testing platform during the first three days of AP exams.  One AP Coordinator reported a failure rate of 30%.  Some students could only submit partial responses, and others could not even log on to take the exams.

10.      Despite the fact that these are challenging times for families, The College Board offered no acceptable remedies to students whose lack of digital access prevented them from fairly testing.  Nor did it offer remedies to students who experienced glitches with the AP platform.  On May 15, 2020, The Chronicle of Higher Education reported, "AP Tests During Covid-19: Heartbreak, Technical Glitches, and Anonymous

Intrigue."[1]  On the same day, The Washington Post reported, "College Board Says New AP Test Online Going Well – But Students Report Big Problems."[2]

11.    The College Board intends to move all of its assessments to an at-home format, including the SAT; however, this year's AP exam administration makes it perfectly clear that until the technical issues, the digital divide and other inequities are adequately addressed, it cannot not do so.

12.    The challenge of the at-home AP exam format is only the final hurdle for many AP students, and it is also one step that many students may never even reach. Some AP students are fully denied access to AP exams and others must overcome additional hurdles to obtain access to AP exams based solely on where they are enrolled in school.  Access is particularly challenging for students enrolled in California public charter schools or homeschools.

### THE PARTIES

**Plaintiffs:**

13.    Plaintiff  J.P. is acting on behalf of her minor son R.P. and all others similarly situated. R.P. is a high school student who is registered to take at-home AP exams.  Pseudonyms have been used throughout the complaint in order to protect the identity of the minor Plaintiffs.  Further the public has little legitimate interest in knowing the true identity of the Plaintiffs.  The Defendants will not be prejudiced by allowing the Plaintiffs to proceed anonymously and in this manner until a protective order is in place.

14.    The National Center for Fair & Open Testing ("FairTest") is a nationwide public charity that operates in California. FairTest's mission is to advance quality education and equal opportunity by promoting fair, open, valid evaluations of students, teachers, and schools. FairTest works on behalf of examinees to end the misuses of

---

[1] https://www.chronicle.com/article/AP-Tests-During-Covid-19-/248792
[2] https://www.washingtonpost.com/education/2020/05/15/college-board-says-new-online-ap-tests-are-going-well-students-report-big-problems/

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

standardized tests, placing special emphasis on eliminating the racial, class, gender, and cultural barriers to equal opportunity.  In pursuit of its mission, FairTest provides information and technical assistance to students and parents as well as advocacy on a broad range of testing concerns, including those relating to the at-home AP exams.

15.    Plaintiff A.K. is acting individually and on behalf of all others similarly situated.  A.K. is a high school student who registered for and took AP exams.

16.    Plaintiff R.G. is acting on behalf of her minor son J.G and all others similarly situated.  J.G. is a high school student who is registered to take at-home AP exams.

17.    Plaintiff M.S. is acting on behalf of her minor daughter Z.S. and all others similarly situated.  Z.S. is a high school student who is registered to take one at-home AP exam.

**Defendants:**

18.    Defendant EDUCATIONAL TESTING SERVICE ("ETS") is registered as a non-profit organization headquartered in Princeton, New Jersey. ETS has multiple offices in the State of California, including within this jurisdiction. Plaintiffs are informed and believe that ETS administers AP exams on behalf of Defendant College Board.

19.    Defendant COLLEGE ENTRANCE EXAMINATION BOARD ("The College Board") is a New York corporation with its principal place of business in New York, New York, which does business in California. Plaintiffs are informed and believe that the AP program is fully owned and operated by The College Board.

20.    Defendants ETS and College Board are referred to collectively herein as "Defendants."

21.    The true names and capacities of defendant DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names and will amend to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe that

each of the DOE defendants is responsible for the acts or omissions alleged in this complaint, and that Plaintiffs' injuries and damages were proximately caused by the acts or omissions of these unnamed defendants.

22.   Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants herein was at all relevant times the principal, agent, alter-ego, joint-venturer, partner, affiliate, manager, subsidiary, servant, employee and/or co-conspirator of each other Defendant, and in performing the acts described in this complaint, was acting in the scope of his, her or its authority with the consent of each other Defendant. Each Defendant ratified and/or authorized the wrongful acts, conduct, omissions, or commissions of each of the other Defendants.  At all relevant times, each Defendant acted with full knowledge of the conduct of each of the other Defendants, with the intention to cooperate therewith.

23.   Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendant issued herein as DOES 1 through 10, inclusive, under the provisions of Central District of California, Local Rule 19-1.  Defendant DOES 1 through 50, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff. Plaintiff will seek leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendants, together with appropriate charging allegations, when ascertained.

24.   All acts of corporate employees as alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

## JURISDICTION AND VENUE

25.   This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from the defendant, and seeks in the aggregate more than $5,000,000, exclusive of costs and interest.

26.    Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

27.    This Court has personal jurisdiction over the parties hereto, because the Defendants are corporations that do business throughout the State of California. The facts underlying this case arise from the State of California and from within this judicial district. Defendants' conduct substantially impacts the State of California and its students. Plaintiffs are informed and believe that each Defendant herein has sufficient contacts with California so as to make proper the exercise of personal jurisdiction over them, and have sufficient minimum contacts so as to render the exercise of personal jurisdiction permissible under traditional notions of fair play and substantial justice.

## COMMON FACTUAL ALLEGATIONS

28.    The College Board claims that students who score a 3 or higher (out of 5) on an AP Exam typically experience greater academic success in college and are more likely to earn a college degree on time than non-AP students.[3] As the only player in the education market with this level of influence over high school curriculum, college admissions, course placement, and financial outcomes, the College Board knows that access to its AP exams must be fair, reliable, and affordable.

29.    To ensure that low-income students can access AP Exams at a reduced cost, Every Student Succeeds Act (ESSA) provides funding for AP Exams and courses under the Title IV, Part A block grant.[4] Additional funding is also available for states and districts to cover AP Exam fees for low-income students. In California, an increasing number of lower income students are enrolling in AP courses. Of the 58.7

---

[3] https://collegereadiness.collegeboard.org/about/benefits/connect-to-ap

[4] https://professionals.collegeboard.org/testing/states-local-governments/new-education-policies/essa-federal-funding-ap

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

percent of the state's K–12 students eligible for the free or reduced-price lunch program in the Class of 2017, 45.5 percent took at least one AP exam.[5]

30.    Each year, millions of high school students take 38 different AP exams at the end of the school year. In 2019, 3.1 million students took a total of 4.9 million AP exams at school. In 2020, 3.4 million students are registered to take over 5 million AP exams. During the first week of testing, students took or attempted to take over 2.2 million AP exams. The cost of an AP exam is generally between $100 and $150 per test.

31.    In 2018, the College Board earned over $480 million dollars from its AP program alone. The College Board collected its exam fees in the Fall of 2019 for the Spring 2020 exams.

32.    AP exams provide a means for high school students to earn college credit while in high school. Defendant College Board advertises that, "by taking an AP course and scoring successfully on the related AP Exam, [a high school student] can save on college expenses: most colleges and universities nationwide offer college credit, advanced placement, or both, for qualifying AP Exam scores... These credits can allow students to save college tuition, study abroad, or secure a second major." College Board further advertises that, "[e]arning a qualifying score on the AP Exam can help you advance and avoid required introductory courses – so you can move directly into upper-level classes and focus on the work that interests you most."

33.    The AP program is the only widely available high program allowing students to earn college credits. Defendant College Board organizes and administers the AP tests. The AP program is the only means for high school students to test for college credit in dozens of subject matters. In order to obtain college credits, students are required to pass the AP test, as scored and reported by Defendants.

34.    Passing scores (a 3, 4, or 5) on the AP exams can save students and their parents thousands of dollars in college tuition and costs. A successful student who takes

---

[5] https://www.cde.ca.gov/nr/ne/yr18/yr18rel16.asp

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

multiple AP exams can potentially finish college a year or more earlier than students who did not earn AP credit during high school. Some students understandably wanted an option to take their AP exams for college credit when COVID-19 forced their schools to convert to distance learning and they could no longer test at school.

35.     However, the format of the at-home AP exams is different from the format students are accustomed to and different from the practice AP exams they have taken. The 2020 home-based AP exams are digitally-based instead of on paper as they have always been in the past. The new exams are scheduled to last only 45 minutes (actually 40 minutes with the required 5 minutes to begin uploading answers before the test ends) instead of 3 hours, and all tests in the same subject are given at exactly the same time. This means that some students in one part of the world could be taking an exam in the middle of the night, while others are taking it in the middle of the day. Students in Hawaii begin their first exams each day at 6 a.m., while students in New York begin the same exams at noon. The 2020 exams include material covered until the time of the COVID-19 breakout instead of the entire course curriculum. Most importantly, the exams are taken at home, where the testing environment can be unpredictable and distracting.

36.     Some of the issues with the at-home format should have been anticipated. As soon as the College Board announced its plans to administer at-home exams, educators, students, parents, and AP coordinators voiced their concerns over equity and access issues. They also expressed concerns about timing and technical problems with the new format as well as score validity.

37.     The College Board announced prior to the administration of the at-home exams that certain disability accommodations that were previously provided would be modified, eliminated, or were deemed "unnecessary" due to the new format.

38.     Dozens of educators and counselors wrote an "Open Letter" to the College Board on April 22, 2020 outlining why the exams would not be fair to students who have no computer, access to Internet or quiet work spaces from which to work, or to

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

students with disabilities who would not have their approved accommodations.[6] Plaintiff FairTest announced that its concerns about the 2020 AP exams included computer equipment and technology, connectivity, the availability of legally required accommodations, security, and score comparability.

39.    The College Board did not address these issues or change its policies prior to the administration of the at-home AP exams. In fact, on May 14, 2020, after 3 full days of AP exam administration, College Board's President David Coleman acknowledged in an email that, "we can't control the conditions in students' homes." He added, "Students may face technology or internet issues, need to tend to unexpected family obligations, or face other disruptions that will impact their testing experience. Like the virus itself, these disruptions will disproportionately impact low-income and underrepresented students." Instead of changing the testing format to address the disparities among student testing environments, however, Mr. Coleman recommended that students explain their disadvantages to college admissions officers. In an admission that the tests are not valid for all students, Coleman said, "We're working to ensure that students who take the exam in challenging situations can share context with admissions officers about their exam experience."

40.    The first week of the 2020 AP exams revealed the deep digital divide among AP test-takers, and it became clear how the revised exam format disproportionately impacted certain groups of students, including those who are under-resourced, who lack access to technology or quiet workspaces, students with disabilities, and students testing in non-ideal time zones. A number of students suffered from technical glitches, timing issues, issues with their computer software, disability accommodation issues, and widespread panic due to the inability to reach anyone at the College Board for assistance.

---

[6] https://www.washingtonpost.com/education/2020/04/22/an-open-letter-college-board-about-online-at-home-ap-tests/

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

41.     After the first week of testing, The College Board reported a failure rate of only 1%, but AP coordinators and students told a different story. Schools estimated that anywhere between 5-20% of their AP test-takers were unable to submit their exam responses through College Board's testing platform during the first week. Other students could not finish their exams or log into the platform at all despite practicing beforehand.

42.     One AP Calculus teacher reported that 3 out of her 13 students, or 23% of her students, faced technical obstacles submitting their work during the AP Calculus AB examination.  This Santa Barbara-area teacher reported that one of her students received an upload error message after the testing time had expired.  A second student had issues with her devices, even though she had practiced logging on and taking mock exams with her teacher. A third student in the class reported that her screen froze, then went blank, and then logged the student out upon trying to submit her answers. This student was never able to get back into the exam to upload her submissions.

43.     Another AP Coordinator reported that, "This whole thing was a mess.  It was unprofessional and added more stress to the students, teachers, families, and coordinators." Another AP coordinator reported a 10% failure rate on the AP Calculus exam. These reports from the ground to do not square up with the College Board's statement that "the vast majority" of the 2.2 million students who tested last week successfully completed those exams, or its written statement that less than 1% technical of test takers encountered technical difficulties.

44.     Students who experienced issues with the College Board's platform emailed their time-stamped work to the College Board, but it was not accepted. They were told that their only remedy was to retake the exam over the summer, if they qualified for a retake exam. Students' anxiety continued to grow as the week progressed

due to legitimate fears that they would complete their work but not be unable to submit it and would then have no remedy.[7]

45.    Students have not been able to confirm access to the retake exams despite technical failures. Students have also reported that they have two AP exams scheduled for the same retake day and that they were told by The College Board that they would have to choose only one exam to take.

46.    FairTest received an influx of reports about at-home AP exam failures and the lack of remedies. One parent reported, "We also had technical issues trying to sign up for a make-up exam.  I spent over an hour on phone with CB.  They refused to allow me to speak to supervisor and offered no reassurance that the problem would be fixed by a makeup."

47.    One student reported that, "Due to a technical malfunction on the College Board's website during the APUSH exam (AP U.S. History), I was unable to submit by work. My dad has been critically ill and hospitalized for the past few weeks and despite this challenge, I persisted in preparing for my AP exams because I wanted to achieve my goals of earning college credits. Now, due to a technical issue on the College Board's website, I am going to have to continue working during this incredibly stressful time in my life to prepare to re-take the exam in June."

48.    One parent said, "My son has time stamped images of his Physics AP answers. Why can't college board find a way to accept those? We worry there is no make up for the make-up test. What happens if this glitch happens on the make up?" Another parent reported, "We also had technical issues trying to sign up for make-up exam.  I spent over an hour on phone with CB.  They refused to allow me to speak to supervisor and offered no reassurance that problem would be fixed by makeup."

---

[7] https://www.washingtonpost.com/education/2020/05/15/college-board-says-new-online-ap-tests-are-going-well-students-report-big-problems/
https://www.insidehighered.com/admissions/article/2020/05/18/students-complain-they-cannot-submit-ap-tests

49.     One student described the experience of carefully preparing for the exam but still being unable to submit his responses. "I took all precautions once I heard from some students that there were submission errors. I updated my computer, used chrome because it was recommended by the college board, sent my brother to my dad's house so I wasn't distracted during my test, and made my family get off the wifi so I could have the maximum potential my wifi could give me. . . Then, when I took Physics 1, my first answer submitted with no problem, but my second question wouldn't submit."

50.     In response to the complaints, the College Board officials initially claimed that their systems did not malfunction, but the problems were instead caused by students. Students were instructed to update their browsers, disable plug-ins, and make sure their devices were properly set up.

51.     Ultimately, in response to what some called a "tsunami" of complaints, the College Board made some adjustments to its policies, announcing on May 17, 2020 that it would provide a backup email submission option of browser-based exams for students testing between May 18 and May 22, 2020. Nonetheless, if the student is unable to upload responses through the exam platform or successfully transmit by email at the time of the exam, as in the case of a home connectivity problem, the student would still have to request a makeup exam. In addition, the College Board will not accept email transmissions from students who already tested between May 11 and May 15, 2020.

52.     Students taking exams between May 18 and May 22, 2020 have an added safeguard, providing a slightly more desirable and less stressful testing environment for these test-takers. Students who experienced technical failures during the first week have still not received any confirmation that they will be eligible to take a makeup exam or that they will receive the added safeguard of email submission, even for their retakes.

53.     An online petition is circulating, called "Let Students Submit AP Work," which requests remedies for the students who tested between May 11 and May 15, 2020 and could not submit their work.[8] The Petition states that, "We, along with all our

---

[8] https://www.change.org/p/college-board-let-students-re-submit-ap-work?signed=true

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

sisters and brothers in humanity, have already been having a hard time because of COVID and we were already tired and stressed out and a lot of us have been struggling with sadness and mental health issues. This will make all of that worse. Fortunately, there's a solution. Most of us still have our work and answers saved. The college board can give us time to re-submit after they fix their website." As of the time of filing, the petition had over 20,000 signatures.

54.     Students who do not wish to retake their exams, and even those who do not wish to test at all, cannot receive a refund of their test fees directly from the College Board. Even though the College Board collected money for the AP exams at least six months ago, it will not directly issue refunds to students. The College Board has stated that after both the regular and makeup testing windows have passed, if students have not taken or attempted to take any exams, their schools will be refunded the cost of their exam fees. It is then up to the students to request fee refunds from their schools. The College Board's website does not provide any instructions to students about how students can receive fee refunds. Its website says, "[L]ocal school policy determines the amount of the refund."

55.     These are challenging times for high school students and their families, emotionally and financially. Students are entitled to the valid and reliable exam they signed up and paid for, absent the severe stress and anxiety associated with the new format. Despite collecting what Plaintiffs believe to be approximately half a billion dollars in exam fees, The College Board has failed to provide students with an AP exam that is similar to the one they purchased.

56.     One counselor reported that, "For students this was a traumatic experience, especially after all the time they put into salvaging this course/the year/etc. CB should have troubleshooted the "what-ifs" ahead of time and had the policy in place for students to submit answers that did not immediately go. Technology issues are not a new phenomenon!  What more can these poor kids be penalized for? CB needs to accept the answers that would not submit last week."

57.    The "digital divide" was not properly managed. Students are entitled to an exam that does not discriminate based on their lack of access to resources or based on their disabilities. The College Board represented that it would provide the necessary technology to all students; however, there is more than one type of device required to take the AP exams this year and different exams require different equipment. For example, all language tests must be taken on a phone or tablet (only specific models), while others are taken on a computer. Although the College Board claimed that it would get a device to everyone who needed one, the method of requesting a device required digital access and was therefore not accessible to the students who needed it.

58.    As of the first day of AP testing, the College Board said that it had "connected" with 27,000 students, less than 1% of this year's AP exam-takers. The distribution of devices to under-resourced students does not fix slow or unavailable internet service, multiple family members using the internet at the same time, or other issues contributing to poor testing environments.

59.    Some students have reported that they have nowhere to take their exams at home where they can be free of distraction. It is unrealistic to think that all students have quiet, private spaces at home in which to test. Lower income students are much more likely to face cramped housing, siblings and parents sharing the same workspace, internet connectivity problems, noisy environments, and less comfortable testing spaces. It has been reported that one New Jersey teacher, worried about her star AP English student's lack of reliable internet at home, inquired with the College Board but was told "have her use the free WiFi at McDonald's."[9]

60.    Prior to the at-home AP exams, counselors, educators and advocates requested that The College Board provide additional testing time to all students. An Open Letter to the College Board said that students should be provided with a flexible time period, not a fixed time, in which to test.  As support for this request, the Letter

---

[9] https://www.nydailynews.com/opinion/ny-oped-taking-an-ap-test-outside-mcds-20200518-pbzbctec4rgnvkhlwrzfsd3poe-story.html

stated, "The proposed time limitations have not been tested under these extreme conditions. With the extra stress associated with this year's tests, many students fear they will not be able to complete the tests in the allotted time frames. We expect this to cause widespread anxiety and panic from minute one. If students know they have enough time, they may still be stressed, but they will be able to relax a little and may even complete the tests with a small amount of extra time, time that may be necessary to accommodate differences in access."[10]

61.    Students have already reported issues with the time limits imposed by this year's AP exams. The exams have not been properly piloted for time limits, and they are more speeded and abridged than the original versions. The College Board has acknowledged the timing issues. The 2020 AP Testing Guide states, "Don't worry if you don't complete all parts of the question before you need to attach and submit your response. To give students as many different chances to demonstrate what they know as possible, a question may have more parts than can be answered in the allowed time. You don't need to complete the entire question to get a score of 5, but you do need to submit whatever work you've done." While this could alleviate some students' despair about not finishing their exams, it confirms the fears of other students that their scores will be seen as invalid or meritless.[11]

62.    Adding to the perception that the scores on this year's exam may not be fair or consistent is the ability of high schools to review students' scores and request score increases. The 2020 AP Testing Guide says that "AP teachers will have the chance to review your score and your exam responses this summer. If you don't receive a score of 3 or higher and your teacher is convinced you should have, your teacher will be able to engage with the AP Program's college faculty partners to review and confirm your score, ensuring it's fair and appropriate." This policy benefits students at schools with

---

[10] https://www.washingtonpost.com/education/2020/04/22/an-open-letter-college-board-about-online-at-home-ap-tests/

[11] https://apcentral.collegeboard.org/pdf/ap-testing-guide-2020.pdf

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

more resources, and it discriminates against students who are underprivileged or who attend under-resourced schools.[12]

63.    Moreover, there is no guarantee that the AP exam scores will count for anything in the collegiate landscape. While some colleges have said they will accept the credit, others have remained silent. Some colleges view at-home testing as inherently inequitable.

64.    Defendants' unlawful conduct has caused and will continue to cause substantial and irreparable damage and injury to Plaintiffs in ways that cannot be compensated with money, and Plaintiffs have no speedy, plain, or adequate remedy at law. Students pay for these AP exams but will have disadvantages due to the College Board's restrictions and practices discussed herein.

65.    If  Defendants' actions are not remedied immediately, Plaintiffs will also suffer injuries, such as the cost of preparing for yet another set of AP exams.

**Students with Disabilities**

66.    When the College Board announced the new at-home testing format, it initially stayed silent on accessibility and accommodations for disabled students. After parents, teachers and counselors repeatedly asked for more details about accommodations, the College Board announced a month before the AP exams were scheduled to begin that all accommodations would be provided on the at-home exams. S Still, no details about how the exams would be delivered to students with disabilities were released at that time.

67.    On April 27, approximately two weeks before the exams were scheduled to begin, the College Board finally released information regarding disability accommodations. [13] Students were told that extended time would be provided through the online exam.  They were also told that they needed to use their own assistive

---

[12] Id.
[13] https://apcentral.collegeboard.org/pdf/ap-testing-guide-2020.pdf?SFMC_cid=EM305179-&rid=80697368
899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

technology, such as screen reader software, that was compatible with the at-home AP platform.

68.     The College Board's announcement regarding test accommodations also stated that "Students approved to use specific devices or aids may use what they have access to at home." In other words, The College Board would not be providing any of these devices or aids, even if the students had access to them during AP exams taken at school.

69.     Assuming the availability, willingness and ability of students' household members, the College Board stated that students approved for a reader or scribe "may be assisted by a family or household member while testing." These tasks are ordinarily performed by a trained staff member at school during AP exams.

70.     Some students who were initially approved for 50% extended time were initially told they had their 50% time built into the exams. On May 7, less than one week before the AP exams were scheduled to begin, some, but not all, of those students with the accommodation of 50% extended time were informed they would automatically receive 100% extended time (those with 100% extended time did not get more time). Students with this 50% extended time were informed this would take the place of their breaks. Some students with 50% extended time did not want this additional time, because they have to wait the time for each question of the exam has passed to move to the next question.

71.     In addition, with the additional time, students who have two exams on one day have little to no break between them.  For example, there are exams scheduled at 11:00 a.m. and 1:00 p.m. on the same day. So, if a student with extended time has 90 minutes to finish the first exam at 11:00 a.m., he or she would have to start the 1:00 p.m. exam immediately thereafter at 12:30 p.m.  There is no time to take a break, as the AP instructions specifically require students to log on 30 minutes before their exams commence.

72.     "Breaks-as-needed" is a common disability accommodation, especially for students with medical issues such as diabetes. These students are generally not given extended testing time, but their breaks do not count as part of their testing time. With the 2020 format, there are no breaks at all.

73.     Many disability accommodations offered to the at-home AP examinees are dependent upon access to purchased software. Other accommodations require the availability of an adult who happens to be free during testing time.  This available adult must not be working remotely in the home, or outside of the home and must also be qualified to act as a reader or a scribe according to the College Board's detailed standards. These required circumstances again weigh heavily in favor of wealthier students who have access to purchase software and adults who have the luxury of time to help them take their AP exams.

74.     All AP students were told that any disability accommodation requests approved after the conversion to online testing would force them to forfeit their original testing day and have only one opportunity to test. Some students needed to request different or additional accommodations based upon exam's format change.

75.     The at-home AP exams have not been validated for students with disabilities or for students with these accommodations. The inequitable access to available household members and the disparity in technology invalidate the at-home AP exam results.

### Public Charter School Students and Homeschool Students

76.     The change of the AP exam to the at-home format is only the final hurdle for many students, and it is one hurdle that some students will never even reach. The College Board denies access to students or causes them to incur additional costs to access AP exams based solely on where they are enrolled in school.

77.     The College Board decides who will and who will not be able to access its AP program and the associated secondary, postsecondary and financial aid opportunities. The College Board does not allow access on an equal and nonpartisan

basis and makes false claims regarding the availability of its programs in its written materials. The College Board has been made aware that it excludes groups of students from its programs and their benefits. However, it has not made any effort to remedy the situation.

78.    The College Board determines what schools and what types of schools can provide AP courses and administer AP exams. The College Board's Level 1 authorization allows schools to provide AP courses to their students and receive their students' AP and other College Board test scores. Schools with Level 1 authorization cannot administer AP or other College Board exams. The College Board's Level 2 authorization allows schools to receive scores as well as administer AP Exams to their students.

79.    The College Board has denied certain classes of schools, including public charter schools, the opportunity to administer AP exams, if their curriculum is partially or entirely non-classroom based. Even after the AP exams moved to an at-home format this year, students who attended Level 1 schools were not permitted to register for AP exams. This policy is discriminatory and deprives students of the financial opportunities that the AP program affords students who pass the exams.

80.    In California, families have the option of sending their children to local public schools, public charter schools or private schools. As of the 2017–18 school year, the number of California students enrolled in charter schools was approximately 628,849, or approximately ten percent of the public school student population in California.[14] Approximately 25% of California charter schools are either partially or exclusively non-classroom-based (independent study).

81.    There are approximately 120,000 public independent study high school students in California.[15] An estimated 15-20% of these independent study students have

---

[14] https://www.cde.ca.gov/sp/ch/cefcharterschools.asp

[15] Id.

documented disabilities, and this number is on the rise due to the personalized learning opportunities offered through independent study.

82.     The College Board does not allow public charter schools that offer independent study programs or blended learning to administer AP exams to their own students, even if they are qualified to teach the curriculum. There are countless other small private schools, homeschool and religious schools that are not College Board-approved test centers. Students at these schools have no access to AP exams or additional barriers.

83.     Families at schools without the College Board's approval to test are required to find willing test centers on their own, without the assistance of the College Board. If asked, the College Board will provide parents with a list of all local schools that are approved to administer the AP exam, and parents can call around hoping to find one that will accept their student. Based on Plaintiffs' experiences, few schools actually accept outside students, and the schools on the College Board's lists may be hundreds of miles away from their homes. Some schools that do agree to test outside students charge exorbitant sums on top of the official test fees. Test centers that accept outside students are generally less willing to accept disabled students with accommodations for AP testing.

84.     The College Board's policy says that "The AP Program encourages AP coordinators to assist homeschooled students, students from virtual schools, and students whose schools don't offer AP Exams," but there is no requirement that they do so and no alternative if parents cannot locate a willing test center on their own.

85.     A.K. is a public charter school student with disabilities who resides in Long Beach, California. His high school does not have authorization to administer AP exams. One local high school would not administer A.K.'s AP exams with accommodations, saying that it had a "limited number of proctors and it sounds like [the student] will require a designated proctor because of the specific accommodations from the College Board."

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

86.     Z.S. attends a public charter school that offers an independent study curriculum. Z.S. and her siblings have always been educated through homeschooling or through an independent study program due to religious reasons. Her school is not a College Board-approved test center, but she wished to take the AP English exam after having taken the course.

87.     In the Fall of 2019, Z.S.'s mother called approximately 14 schools in an attempt to register her to take the AP exam. Her neighborhood high school would not accept her for testing, and neither would any of the schools on the list provided to her by the College Board. Z.S.'s mother finally heard of a school near her home that would test outside students for an additional fee of $150 on top of her exam registration fee.

88.     Due to the testing difficulties, some Level 1 schools now discourage enrollment in AP courses or have stopped offering them altogether, even though this means that their students may forego the opportunity to earn the college credits (and cost savings) that come along with those courses.

**Background of Plaintiffs**

**FairTest:**

89.     The National Center for Fair and Open Testing ("FairTest") is a Massachusetts public charity that operates in California, nationwide, and internationally. FairTest's mission is to advance quality education and equal opportunity by promoting fair, open, and valid evaluations of students, teachers, and schools. FairTest also works to end the testing practices that impede those goals, including standardized testing that negatively impacts students with disabilities, underrepresented minorities, gender bias, and dozens of other issues involving the fair evaluation of students, teachers, and schools.

FairTest engages in three main activities:

1) **Education of the public.** FairTest serves as a unique source of information about testing and alternatives for educators, parents, public officials, journalists and policymakers.

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

2) **Advocacy.** FairTest advocates on behalf of low income families, disabled students and other marginalized student groups to close the gap in admissions and outcomes. FairTest coordinates and catalyzes educators, citizen groups and parents to bring about needed assessment reforms.

3) **Strategic Assistance.** FairTest provides training and advice to parents, educators and a broad range of civil rights organizations about assessments.

90.    FairTest places special emphasis on eliminating the racial, class, gender, and cultural barriers to equal opportunity posed by standardized tests. In pursuit of its mission, FairTest provides information, technical assistance and advocacy on a broad range of testing concerns, focusing on three main areas: K-12, college and university admissions, and employment tests.

91.    Since the College Board announced its changes to the AP exam two months ago, FairTest has expended significant resources addressing the issues associated with the at-home exam and advocating for the student groups most affected. In the past two months, FairTest has repeatedly communicated its concerns about the 2020 AP exams through social media, interviews with journalists, phone calls, and emails.

92.    Specifically, FairTest  emphasized the potential issues involving computer equipment and technology, connectivity, the availability of legally required accommodations, test security and score comparability. In the last week alone, Robert Schaeffer, FairTests' Interim Executive Director, communicated with dozens of students, parents, and reporters specifically about the glitches and "snafus" that took place during the first week of AP exams. Dozens of other queries were sent to FairTest's general email box and referred for response.

93.    In the last week, Akil Bello, FairTest's Senior Director of Advocacy and Advancement, has responded to hundreds of emails about AP issues and recorded close to 200 accounts of student testing issues. He has spent additional time advocating for under-resourced students taking the AP exams this year through social media and

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

interviews with reporters. In the last two weeks, nearly all of Mr. Bello's time has been devoted to AP-related issues.

94.    FairTest addresses multiple testing reform issues involving high stakes testing, college admissions testing, mandatory state testing, K-12 admissions, as well as graduation and promotion tests. Instead of expending its resources on the spectrum of testing issues, FairTest has been forced to allocate a disproportionate amount of resources in recent weeks to address the College Board's AP failures.

**R.G. on behalf of J.G.:**

95.    R.G. is acting on behalf of her minor son J.G, who is a high school junior enrolled in four (4) AP courses this year: AP Calculus AB, AP Chemistry, AP United States History, and AP English Literature and Composition.  He paid for and registered to take all four AP exams. On Tuesday, May 12, 2020, J.G. took the AP Calculus AB examination and successfully submitted his work in a JPEG format.  The next day, while using the same computer, the same browser, and connected to the same Wi-Fi network in the same room in his home, he took the AP Chemistry exam; however, when he attempted to submit his work in the same JPEG format, he received a message stating: "there was an error, we did not receive your submission."

96.    J.G. and his mother, R.G., immediately took a picture of his work, emailed the College Board with his test work attached as a JPEG, and called the College Board. They were unable to reach anyone after remaining on hold for 90 minutes.

97.    As a result, J.G. applied to take a Retake Examination. In the application, he had to explain why he needed the retake. J.G. received a message saying that he be notified the week of May 25, 2020, if he was accepted for a Retake, less than a week before the Retake was scheduled to take place.

98.    After applying to retake the AP Chemistry exam, J.G. realized he will not be able available to retake this test on the scheduled date because of a scheduling conflict. If the College Board does not accept his work that was photographed, time-

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

stamped, and promptly emailed to the College Board on May 13, 2020, he will not have the opportunity to pass the test and receive the benefits of AP credit.

**A.K.:**

99.    Plaintiff A.K. is a graduating senior with learning disabilities including ADHD, sensory motor dysfunction, and a speech and language disorder.  When A.K. was in his 9th grade year at a public charter school, his mother contacted the AP Coordinator at the local public school in his district in Long Beach, California, and A.K. was initially approved to take the AP examination at the high school. When A.K.'s mother informed the AP Coordinator that A.K. needed accommodations for his AP Exam, the AP Coordinator told her that the school could no longer administer the test for A.K. because it did not have a proctor or a teacher available to administer his accommodations.

100.    A.K.'s high counselor contacted the College Board to see if the charter school could administer the examination. The College Board denied the request, and A.K. had to find an alternative location.  A.K.'s mother finally made private arrangements for A.K.'s high school counselor to proctor A.K.'s AP test at the local public school.  In this case, the student and his family were solely responsible for finding the proctor and ensuring he could even take the examination, making access challenging and unduly burdensome.

**M.S. on behalf of Z.S.**

101.    Plaintiff M.S. is acting on behalf of her minor daughter Z.S., who both reside in the Central District of California. Z.S. is currently enrolled in AP English Literature and Composition, and she took the AP examination on May 13, 2020.  Z.S. suffers from severe test anxiety, even under ordinary testing conditions. Z.S. experienced heightened anxiety and fear due to the technical challenges involved with the administration and submission of the exam. Under these rushed and condensed conditions, Z.S. did not have time to complete the AP English exam on May 13th; however, she is not eligible to retake the exam. The College Board's website policy

expressly prohibits retakes of the examination when a student runs out of time: "Running out of time to finish and submit your response is NOT an approved reason for requesting a makeup test."

**J.P. on behalf of R.P.**

102.    Plaintiff J.P., on behalf of her minor son R.P. who is a sophomore at Saugus High School,  is currently enrolled in two AP classes, AP Chemistry and AP World History. J.P. and R.P. live in the Central District. The AP Chemistry exam was administered on May 20, 2020, the very day of the six-month anniversary of the tragic Saugus school shooting.

103.    Already under tremendous amounts of stress and anxiety due to COVID and the anniversary of this horrific school event, R.P. began the AP Chemistry exam and successfully submitted the answer to the first question.  After finishing the second of two questions with six minutes remaining, R.P. tried to submit his answer but received an error message that his work would not upload, despite his careful attention to following instructions. He and his mother actually practiced logging in, preparing, and submitting answers the day prior to the real examination.

104.    His mother J.P., an LAUSD teacher, immediately called the College Board. After waiting on hold and transferring to several different departments, she finally reached a customer service agent.  J.P. asked whether College Board was experiencing reports of similar technical problems, and rather than responding honestly, the College Board customer service employee said they had received very few technical problem reports, and blamed the student for using an out of date browser. R.P.'s browser was not out of date.

105.    J.P. asked if she could help her son R.P. submit the work, and was told no. R.P. as a first week test-taker, does not have the same remedy nor did he have the same test experience as the week two test-takers, who now have the opportunity to submit their work if the College Board rejects submission attempts.  R.P. has saved his entire

answer, including the unsubmitted portion to question 2, and requests that the College Board accept his work and grade his test answers.

## CLASS ACTION ALLEGATIONS

PlaintiffS bring this action on his own behalf, and as a class action on behalf of the Classes defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Classes consist of tens of thousands of students victimized by Defendants' unfair and illegal practices.  Specifically, Plaintiffs brings this suit on behalf of the following Classes:

> **The "Nationwide Class"**:  All persons who are or were students who did not have fair and equal access to, or were not able to complete, the 2020 AP exams as a result of the College Board's decisions prior to the administration of the exams. The class excludes counsel representing the class and all persons employed by said counsel.

> **The Fair Access "California Subclass":**  All persons who are or were students who did not have fair and equal access to, or were not able to complete, the 2020 AP exams as a result of the College Board decisions prior to the administration of the exams.   The class excludes counsel representing the class and all persons employed by said counsel.

> **The Disabled Students "California Subclass"**:  All persons who are or were disabled students who did not have fair and equal access to the AP exams due to the College Board's decisions. The class excludes counsel representing the class and all persons employed by said counsel.

> **The Under-Resourced "California Subclass"**:  All persons who are or were under-resourced students who did not have fair and equal access to

899-5656-0001

- 28 -

the AP exams due to the College Board's decisions. The class excludes counsel representing the class and all persons employed by said counsel.

**The Denied Access Students "California Subclass":** All persons who are or were students who were denied access to, faced additional burdens, or were not able to complete, the 2020 AP exams as a result of the College Board decisions prior to the administration of the exams. The class excludes counsel representing the class and all persons employed by said counsel.

Numerosity: The proposed classes are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

Typicality: Plaintiff's claims are typical of the claims of his respective Classes in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims.

Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Undersigned counsel has substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiffs and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to the Classes.

Superiority of Class Action and Impracticability of Individual Actions: Plaintiffs and the members of the Classes suffered harm as a result of the College Board

Defendants' unlawful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Individual joinder of all members of the Classes is impractical.  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members.  Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

Common Questions of Law and Fact Predominate:  In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Classes and which predominate over any question of law or fact affecting only individual members of the Classes.  Common questions of law and fact include, but are not limited to, the following:

   a. The questions of law and fact common to the Nationwide Class include the following: (1) were members of the Nationwide Class entitled to equal access to the AP exams?; (2) did Defendants' practices constitute breach of contract?; (3) did Defendants' practices constitute breach of implied covenant of good faith and fair dealing?; (4) did Defendants' practices constitute negligence?; (5) did Defendants' practices constitute negligent misrepresentation?; (6) did Defendants' practices constitute gross negligence?; (7) did Defendants' practices constitute unjust enrichment?;

(8) did Defendants' practices constitute breach of implied in fact contract?; (9) did Defendants' practices constitute breach of fiduciary duty?; (10) did Defendants' practices constitute violation of Americans with Disabilities Act?; (11) did Defendants' practices constitute violation of Unruh Act?; (12) did Defendants' practices constitute violation of Americans with Disabilities Act Section 794?; (13) did Defendants' practices constitute violation of Americans with Disabilities Act Section 12101?; (14) did Defendants' practices constitute violation of Rehabilitation Act?; (15) did Defendants' practices constitute unfair competition?; (16) did Defendants' practices constitute false advertising?; and (17) are members of the Nationwide Class entitled to damages?

b.  The questions of law and fact common to the California Subclasses include the following:  (1) were members of the California  SubClass entitled to equal access to the AP exams?; (2) did Defendants' practices constitute breach of contract?; (3) did Defendants' practices constitute breach of implied covenant of good faith and fair dealing?; (4) did Defendants' practices constitute negligence?; (5) did Defendants' practices constitute negligent misrepresentation?; (6) did Defendants' practices constitute gross negligence?; (7) did Defendants' practices constitute unjust enrichment?; (8) did Defendants' practices constitute breach of implied in fact contract?; (9) did Defendants' practices constitute breach of fiduciary duty?; (10) did Defendants' practices constitute violation of Americans with Disabilities Act?; (11) did Defendants' practices constitute violation of Unruh Act?; (12) (12) did Defendants' practices constitute violation of Rehabilitation Act?; (15) did Defendants' practices constitute unfair competition?; (16) did Defendants' practices constitute false advertising?; and (17) are members of the California Sub Class entitled to damages?

106.    <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through the mail and paid for by the College Board.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

112.    Plaintiffs repeat and incorporates by reference paragraphs 1 to 111 of this Complaint.

113.    Upon registration for the AP exams, the Class Members entered into an agreement with the College Board wherein the College Board expressly recognizes its obligation to ensure a fair and equitable opportunity to demonstrate college readiness for every student and to prevent anyone from gaining an unfair advantage on the tests.

114.    Defendants breached the agreement by failing to ensure a fair and equitable testing opportunity and to prevent anyone from gaining an unfair advantage by the College Board's distinctions between what is considered an official test site, accommodations and bars to taking the exams.

115.    As a direct result of Defendants' breach, Plaintiff and the Class suffered damages.

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

116.    Plaintiffs repeat and incorporates by reference paragraphs 1 to 115 of this Complaint.

117.    Defendants breached the express contract provision obligating Defendants to ensure a fair and equitable opportunity to demonstrate college readiness for every student and to prevent anyone from gaining an unfair advantage on the AP exams.

118.    As a direct result of Defendant's breach, Plaintiff and the Class suffered damages.

///

///

///

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

### THIRD CLAIM FOR RELIEF

### NEGLIGENCE

119.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 118 of this Complaint.

120.   Defendants, as owners, sponsors, developers and administrators of the AP exams, respectively, had a duty to exercise reasonable care in providing the exams to Plaintiff and the Class.  Specifically, Defendants were under a duty to offer and administer the exams in a fair and equitable manner and to safeguard the exams against any foreseeable unfair advantages.

121.   Defendants, through an affirmative and/or promised act, undertook to render the exams in a fair and equitable manner, free from impropriety.

122.   Defendants breached their duty by negligently offering and administering the exams despite failing to ensure a fair and equitable testing opportunity and access and failing to prevent anyone from gaining an unfair advantage by the College Board's distinctions between what is considered an official test site, accommodations, and bars to taking the exams.

123.   Defendants' conduct foreseeably and substantially caused Plaintiff and the Class to suffer damages.

124.   Plaintiff and the Class suffered damages as a direct and proximate result of Defendants' breach.

### FOURTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

125.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 124 of this Complaint.

126.   Defendants misrepresented to Plaintiff and the Class that the AP exams would be fairly and equitably offered and administered.

127.   Based on the history of which types of students took these exams and the College Board's active role in creating rules and barriers to entry to the exams,

899-5656-0001

Defendants should have known that its representations regarding fairness, equity and validity were false.

128.    Defendants intended to induce Plaintiff and the Class to rely on the misrepresentations in signing up for the exams and in trusting that Defendants were administering the exams fairly.

129.    Plaintiff and the Class acted in justifiable reliance upon the misrepresentation by registering for and taking or not being able to take the exams, resulting in injury to Plaintiff and the Class.

## FIFTH CLAIM FOR RELIEF

### GROSS NEGLIGENCE

130.    Plaintiffs repeat and incorporates by reference paragraphs 1 to 129 of this Complaint.

131.    There is an imminently clear and present danger that the AP exams will be administered unfairly and invalidly as there is no equal access to these exams for all 2020 AP exam takers, students with disabilities or under-resourced students, based on fundamental flaws inherent to the College Board's requirements for access to these exams.

132.    There is also an imminently clear and present danger that the AP exams will be exploited by individuals.

133.    Defendants have knowledge of and/or awareness of the imminent danger of unfair administration of these exams and the risk of exploitation.

134.    Therefore, it is indisputably foreseeable that more students like those in this class will be denied an equal opportunity to partake in these tests, which in turn will affect their ability to show college readiness.

135.    By failing to rectify the obvious flaw—unequal access—Defendants evince a conscious disregard of the consequences.

As a result of Defendants gross negligence, Plaintiff and the Class suffered damages.

899-5656-0001

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

136.    Plaintiffs repeat and incorporates by reference paragraphs 1 to 135 of this Complaint.

137.    Plaintiff and the Class conferred benefits to Defendants by registering for, paying for, and taking the exams.

138.    Defendants knowingly and willingly retained the registration fees and associated fees conferred in connection with registering for and taking the exams despite knowing of these inequities.

139.    Under the circumstances, it would be inequitable for Defendants to retain this monetary benefit at the expense of Plaintiff and the Class.

140.    Moreover, no adequate legal remedy exists.

141.    As a direct result of Defendants' unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement by Defendants of the benefit conferred by Plaintiff and the Class.

142.    Defendants benefited from their unlawful acts, as alleged herein, through payment by Plaintiffs and the Class for the 2020 AP exams, and through the resulting profits enjoyed by Defendants as a direct result of such payments.

143.    As a direct and proximate result of Defendants' conduct, they have been and continue to be unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

144.    It would be against equity and good conscience to permit Defendants to retain the benefit of these payments that were conferred by the Plaintiff and the Class and retained by Defendants. The benefit held by Defendants rightly belongs to the Plaintiffs and the Class, as the Plaintiff and the Class have paid for services that Defendants failed and continue to fail to provide.

145.    In equity, Defendants should not be allowed to retain the economic benefit from their improper conduct and should be ordered to disgorge profits or pay restitution

899-5656-0001

- 35 -

and pre-judgment interest to the Plaintiff and the Class, or in the alternative, ordered to score the exams that were recorded and time-stamped immediately if the student is unable to take a make-up test without charge on the date unilaterally scheduled by Defendants.

## SEVENTH CLAIM FOR RELIEF
### BREACH OF IMPLIED IN FACT CONTRACT

146. Plaintiffs repeat and incorporates by reference paragraphs 1 to 145 of this Complaint.

147. Defendants tacitly promised Plaintiff and the Class, as inferred in whole or in part by its conduct, that it would fairly and equitably offer and administer the exams.

148. Under the circumstances, Plaintiff and the Class presumed based on Defendants' conduct that the tests would be fairly and equitably offered and administered.

149. Defendants breached the implied contract by failing to ensure a fair and equitable testing opportunity for all students.

150. As a result of Defendants' breach, Plaintiff and the Class were damaged.

## EIGHTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY

151. Plaintiffs repeat and incorporates by reference paragraphs 1 to 150 of this Complaint.

152. A fiduciary relationship between Plaintiffs and the Class and Defendants exists. Defendants agreed to offer and administer fair and equitable exams for the benefit of Plaintiff and the Class and were thereby granted a high degree of control and discretionary power to do so, evidencing a high level of trust and confidence in and reliance on Defendants to perform their duties.

153. Defendants breached their fiduciary duty by failing to administer the exams and allow access to the exams in a fair and equitable manner.

154.   As a proximate result of Defendants' breach, Plaintiff and the Class suffered damages.

## NINTH CLAIM FOR RELIFF

### VIOLATION OF AMERICANS WITH DISABILITIES ACT 42 USC SECTION 12101

155.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 154 of this Complaint.

156.   By creating barriers to access for these exams and failing to provide appropriate accommodations for all students, whether disabled or in need of resources, Defendants failed to prevent an unfair disadvantage for students with disabilities.

157.   As a result of Defendants' breach of its duty to provide appropriate accommodations and its violation of the ADA, Plaintiff and the Class were damaged.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF UNRUH ACT CCC SECTION 51-DENIAL OF OPPORTUNITIES FOR DISABLED AND UNDERRESOURCED STUDENTS

158.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 157 of this Complaint.

159.   The Unruh Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civil Code Section 51(a).  The Unruh Act makes liable any person who "denies, aids or incites a denial, or makes any discrimination or distinction" contrary to Section 51.

160.   The Unruh Act provides that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990…shall also constitute a violation of this section."  Cal. Civil Code Section 51(f).

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

161.   Defendants have denied students with disabilities the same access other students have to the AP exams.  Defendants have therefore denied, aided, or incited a denial, or made a discrimination or distinction contrary to Section 51 in doing so.

162.   As a result of Defendants' breach of its duty to provide equal access to AP exams and their violations of the Unruh Act, Plaintiff and the Class were damaged.

## ELEVENTH CLAIM FOR RELIEF

## VIOLATION OF REHABILITATION ACT

163.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 162 of this Complaint.

164.   By creating barriers to access for these exams and failing to provide appropriate accommodations for disabled students, Defendants failed to ensure that the students with disabilities would have equitable access and opportunity to take these exams and participate equally in college admissions by failing to provide adequate accommodations.

165.   As a result of Defendants' breach of their duty to ensure that disabled students would have equitable access and opportunity to take the AP exams and its violation of the Rehabilitation Act, Plaintiff and the Class were damaged.

## TWELVTH CLAIM FOR RELIEF

## UNFAIR COMPETITION, BUSINESS AND PROFESSIONS CODE SECTION 17200

166.   Plaintiffs repeat and incorporates by reference paragraphs 1 to 165 of this Complaint.

167.   California Business & Professions Code Section 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition" including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

168.    By engaging in the unlawful conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL by violating state and federal laws including but not limited to the ADA and the Unruh Act.

169.    As a result of Defendants' violation of Business & Professions Code Section 17200, Plaintiff and the Class were damaged.

## THIRTEENTH CLAIM FOR RELIEF

## FALSE ADVERTISING, BUSINESS AND PROFESSIONS CODE SECTION 17500

170.    Plaintiffs repeat and incorporates by reference paragraphs 1 to 169 of this Complaint.

171.    California Business & Professions Code Section 17500 prohibits acts of "untrue or misleading" advertising.

172.    By engaging in the unlawful conduct alleged above, including the issuance of false statements regarding the percentage of students who faced technological obstacles with submitting their exam answers, Defendants have engaged in unlawful business acts and practices in violation of Business & Professions Code Section 17500 by violating state and federal laws including, but not limited to the prohibition against false advertising.

173.    As a result of Defendants' violation of Business & Professions Code Section 17500, Plaintiff and the Class were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

86.    Plaintiffs seek to recover the following damages and obtain the following relief from Defendants:

///

///

///

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

## ON THE CAUSE OF ACTION FOR BREACH OF CONTRACT

1.     An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.     Economic loss and damages suffered by Plaintiffs.

3.     For attorneys' fees incurred herein, to the extent permitted by law.

4.     Court costs.

5.     For pre and post judgment interest and costs of suit incurred herein.

6.     For such other relief to which Plaintiffs may show themselves justly entitled.

7.     For injunctive relief requiring injunctive relief the College Board to accept any test answers from last week's test by time stamp, photo and email.

## ON THE CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1.     An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.     An injunction precluding the wrongful conduct described herein.

3.     For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.     For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5.     For pre and post judgment interest and costs of suit incurred herein.

6.     For attorneys' fees incurred herein, to the extent permitted by law.

7.     For such other and further relief as the Court may deem just and proper.

///
///
///
///

899-5656-0001

## ON THE CAUSE OF ACTION FOR NEGLIGENCE

1.    An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.    An injunction precluding the wrongful conduct described herein.

3.    For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.    For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5.    For pre and post judgment interest and costs of suit incurred herein.

6.    For attorneys' fees incurred herein, to the extent permitted by law.

7.    For such other and further relief as the Court may deem just and proper.

8.    For injunctive relief requiring injunctive relief the College Board to accept any test answers from last week's test by time stamp, photo and email.

## ON THE CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

1.    An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2    An injunction precluding the wrongful conduct described herein.

3.    For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.    For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5.    For pre and post judgment interest and costs of suit incurred herein.

6.    For attorneys' fees incurred herein, to the extent permitted by law.

7.    For such other and further relief as the Court may deem just and proper.

///

///

///

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

## **ON THE CAUSE OF ACTION FOR GROSS NEGLIGENCE**

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. An injunction precluding the wrongful conduct described herein.

3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5. For pre and post judgment interest and costs of suit incurred herein.

6. For attorneys' fees incurred herein, to the extent permitted by law.

7. For such other and further relief as the Court may deem just and proper.

8. For injunctive relief requiring injunctive relief the College Board to accept any test answers from last week's test by time stamp, photo and email.

## **ON THE CAUSE OF ACTION FOR UNJUST ENRICHMENT**

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. An injunction precluding the wrongful conduct described herein.

3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5. For pre and post judgment interest and costs of suit incurred herein.

6. For attorneys' fees incurred herein, to the extent permitted by law.

7. For such other and further relief as the Court may deem just and proper.

///

///

///

899-5656-0001

## ON THE CAUSE OF ACTION FOR BREACH OF IMPLIED
## IN FACT CONTRACT

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. An injunction precluding the wrongful conduct described herein.

3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5. For pre and post judgment interest and costs of suit incurred herein.

6. For attorneys' fees incurred herein, to the extent permitted by law.

7. For such other and further relief as the Court may deem just and proper.

8. For injunctive relief requiring injunctive relief the College Board to accept any test answers from last week's test by time stamp, photo and email.

## ON THE CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. An injunction precluding the wrongful conduct described herein.

3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

5. For pre and post judgment interest and costs of suit incurred herein.

6. For attorneys' fees incurred herein, to the extent permitted by law.

7. For such other and further relief as the Court may deem just and proper.

8. For injunctive relief requiring injunctive relief the College Board to accept any test answers from last week's test by time stamp, photo and email.

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL

## ON THE CAUSE OF ACTION FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT 42 USC SECTION 12101

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.
2. An injunction precluding the wrongful conduct described herein.
3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.
4. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.
5. For pre and post judgment interest and costs of suit incurred herein.
6. For attorneys' fees incurred herein, to the extent permitted by law.
7. For such other and further relief as the Court may deem just and proper.

## ON THE CAUSE OF ACTION FOR VIOLATION OF UNRUH ACT CCC SECTION 51-DENIAL OF OPPORTUNITIES

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.
2. An injunction precluding the wrongful conduct described herein.
3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.
4. For statutory damages as set forth under the Unruh Act.
5. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.
6. For pre and post judgment interest and costs of suit incurred herein.
7. For attorneys' fees incurred herein, to the extent permitted by law.
8. For such other and further relief as the Court may deem just and proper.

///
///

## ON THE CAUSE OF ACTION FOR UNFAIR COMPETITION, BUSINESS AND PROFESSIONS CODE SECTION 17200

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.
2. An injunction precluding the wrongful conduct described herein.
3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.
4. For restitution as set forth in Business & Professions Code 17200.
5. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.
6. For pre and post judgment interest and costs of suit incurred herein.
7. For attorneys' fees incurred herein, to the extent permitted by law.
8. For such other and further relief as the Court may deem just and proper.

## ON THE FIFTEENTH CAUSE OF ACTION FOR FALSE ADVERTISING, BUSINESS AND PROFESSIONS CODE SECTION 17500

1. An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.
2. An injunction precluding the wrongful conduct described herein.
3. For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.
4. For restitution as set forth in Business & Professions Code section 17500.
5. For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.
6. For pre and post judgment interest and costs of suit incurred herein.

///
///
///

899-5656-0001

7.   For attorneys' fees incurred herein, to the extent permitted by law.

8.   For such other and further relief as the Court may deem just and proper.

DATED: May 19, 2020                    BAKER, KEENER & NAHRA, LLP

                                       By  */s/ PHILLIP A. BAKER*
                                           PHILLIP A. BAKER
                                           JENNIFER L. STONE

                                       MILLER ADVOCACY GROUP

                                       By  */s/ MARCI LERNER MILLER*
                                           MARCI LERNER MILLER
                                           CHRISTINA N. HOFFMAN
                                       Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: May 19, 2020                    BAKER, KEENER & NAHRA, LLP

                                       By  */s/ PHILLIP A. BAKER*
                                           PHILLIP A. BAKER
                                           JENNIFER L. STONE

                                       MILLER ADVOCACY GROUP

                                       By  */s/ MARCI LERNER MILLER*
                                           MARCI LERNER MILLER
                                           CHRISTINA N. HOFFMAN
                                       Attorneys for Plaintiffs

899-5656-0001

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT & DEMAND JURY TRIAL