1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
Matthew D. Benedetto (SBN 252379)
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400
matthew.benedetto@wilmerhale.com
(additional counsel on signature page)

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Plaintiff J.P. on behalf of her minor son R.P., and all others similarly situated; THE NATIONAL CENTER FOR FAIR & OPEN TESTING doing business as FAIRTEST, a Massachusetts Corporation, et al.,<br><br><br><br>                              Plaintiffs,<br><br>    v.<br><br>EDUCATIONAL TESTING SERVICES (ETS), a New York corporation; THE COLLEGE ENTRANCE EXAMINATION BOARD, a New York corporation, doing business as THE COLLEGE BOARD, et al.,<br><br>                              Defendants. | Case No. 2:20-cv-04502-PSG-PVC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY LITIGATION UNDER 9 U.S.C. § 3**<br><br><br>Hearing Date: November 2, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Courtroom: 6A |

## NOTICE OF MOTION

TO ALL PARTIES, PLEASE TAKE NOTICE THAT, on November 2, 2020 at 1:30 p.m. at First Street Courthouse, 350 West 1st Street, Courtroom 6A, Los Angeles, California 90012-4565, Defendants will and hereby do move the Court for an order staying this litigation in favor of arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3.  This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of James Clewley, all papers from this case on file with the Court, and submissions that may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place by telephone on August 20, 2020.

Dated:  August 31, 2020

*/s/ Matthew D. Benedetto*
Matthew D. Benedetto (SBN 252379)
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5323
Fax: (213) 443-5400
matthew.benedetto@wilmerhale.com

Alan E. Schoenfeld
(pending admission *pro hac vice*)
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8851
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

*Counsel for Defendants*

Bruce M. Berman
(pending admission *pro hac vice*)
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6173
Fax: (202) 663-6363
bruce.berman@wilmerhale.com

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    The Parties ............................................................................................ 2

    B.    The AP Agreements ............................................................................. 3

    C.    This Lawsuit ......................................................................................... 7

ARGUMENT .............................................................................................................. 7

   I.    The Parties Agreed To Arbitrate This Dispute ......................................... 8

    A.    The Parties Formed An Agreement To Arbitrate ............................. 8

    B.    This Dispute Is Covered By The Arbitration Agreement.............. 10

    C.    The Parties Delegated Questions Of Arbitrability To The Arbitrator........................................................................................... 11

   II.    There Is No Basis For Plaintiffs To Resist Arbitration .......................... 13

    A.    The Arbitration Agreement Is Not Unconscionable...................... 13

    B.    Plaintiffs' Youth Does Not Invalidate The Arbitration Agreement............................................................................................ 15

   III.    Nonsignatory FairTest Must Arbitrate Its Claims .................................. 17

   IV.    Alternatively, FairTest's Claims Should Be Stayed Pending Arbitration ................................................................................................. 20

CONCLUSION........................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.V. v. iParadigms, Ltd. Liability Co.*,
    544 F. Supp. 2d 473 (E.D. Va. 2008), *aff'd in relevant part, rev'd
    on other grounds* 562 F.3d 630 (4th Cir. 2009) ............................................16

*American Bankers Insurance Group, Inc. v. Long*,
    453 F.3d 623 (4th Cir. 2006) ........................................................................19

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) ........................................................................................7

*Anderson v. Salesforce.com, Inc.*,
    No. 18-CV-06712, 2018 WL 6728015 (N.D. Cal. Dec. 21, 2018) ...............21

*Archer v. TIC-The Industrial Co.*,
    No. 16 Civ. 6649, 2016 WL 7635956 (C.D. Cal. Nov. 7, 2016) ..................14

*AT&T Technologies, Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986) ..................................................................................8, 11

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ....................................................20, 21

*Bloom v. ACT, Inc.*,
    No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018), ECF No. 86 ............15, 17

*Boucher v. Alliance Title Co.*,
    25 Cal. Rptr. 3d 440 (Cal. Ct. App. 2d Dist. 2005)......................................19

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015).............................................................8, 11, 12

*Brinkley v. Monterey Financial Services, Inc.*, |
    196 Cal. Rptr. 3d 1 (Cal. Ct. App. 4th Dist. 2015) ......................................12

*Capili v. Finish Line, Inc.*,
    699 F. App'x 620 (9th Cir. 2017)..................................................................13

*Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc.*,
    No. 8:19-cv-00642, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020).............20, 21

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000)................................................................7, 20

*Cipolla v. Team Enterprises, LLC*,
    810 F. App'x 562 (9th Cir. 2020)................................................................13

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962)........................................................................21

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006)......................................................................17

*Doe #1 v. College Board*,
    440 F. Supp. 3d 349 (S.D.N.Y. 2020)....................................14, 15, 16, 17

*Dohrmann v. Intuit, Inc.*,
    No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020).........................9

*Dotson v. Amgen, Inc.*,
    104 Cal. Rptr. 3d 341 (Cal. Ct. App. 2d Dist. 2010)....................................13

*Douglass v. Pflueger Hawaii, Inc.*,
    135 P.3d 129 (Haw. 2006)...........................................................................15

*Durrett v. ACT, Inc.*,
    310 P.3d 1047 (Haw. Ct. App. 2011)..........................................................15

*Dvorsky v. Axis Global Systems, LLC*,
    No. CV 17-422, 2017 WL 7079459 (C.D. Cal. June 15, 2017)...................11

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
    Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001)........................................................................20

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012)....................................................16, 17

*Evergreen Media Holdings, LLC v. Stroock & Stroock & Lavan LLP*,
    No. 15-cv-1648, 2015 WL 12765630 (C.D. Cal. Apr. 16, 2015)................19

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007)......................................................9, 15

*Fensterstock v. Education Finance Partners*,
    No. 08 Civ. 3622, 2012 WL 3930647 (S.D.N.Y. Aug. 30, 2012)...............14

*GIB, LLC v. Salon Ware, Inc.*,
 634 F. App'x 610 (9th Cir. 2016).................................................................17

*Giuliano v. Inland Empire Personnel, Inc.*,
 58 Cal. Rptr. 3d 5 (Cal. Ct. App. 2d Dist. 2007)...........................................14

*Gountoumas v. Giaran, Inc.*,
 No. CV 18-7720, 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) ...............12

*Green v. Kline Chevrolet Sales Corp.*,
 No. 2:19CV127, 2019 WL 3728266 (E.D. Va. Aug. 7, 2019) ....................15

*Gunawan v. Randstad General Partner (US) LLC*,
 No. SACV 13-01464, 2013 WL 12142565 (C.D. Cal. Dec. 16, 2013) ........21

*Harden v. Am. Airlines*,
 178 F.R.D. 583 (M.D. Ala. 1998) ................................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) .....................................................................................8

*In re Facebook Biometric Information Privacy Litigation*,
 185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........................................................10

*In re Samsung Galaxy Smartphone Marketing & Sales Practices Litigation*,
 298 F. Supp. 3d 1285 (N.D. Cal. 2018) ........................................................21

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
 206 F.3d 411 (4th Cir. 2000) ........................................................................19

*Jaffe v. Zamora*,
 57 F. Supp. 3d 1244 (C.D. Cal. 2014)......................................................20, 21

*Jensen v. U-Haul Co. of California*,
 226 Cal. Rptr. 3d 797 (Cal. Ct. App. 4th Dist. 2017)..............................17, 18

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*,
 No. C 07-03983, 2008 WL 2397466 (N.D. Cal. June 11, 2008) .................19

*JSM Tuscany, LLC v. Superior Court*,
 123 Cal. Rptr. 3d 429 (Cal. Ct. App. 2d Dist. 2011).....................................18

*KPMG LLP v. Cocchi*,
 565 U.S. 18 (2011) ..........................................................................................7

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*,
    88 Cal. Rptr. 2d 664 (Cal. Ct. App. 2d Dist. 1999)......................................14

*Landry v. Time Warner Cable, Inc.*,
    No. 16-CV-507-SM, 2018 WL 4697578 (D.N.H. Sept. 27, 2018)...........9, 15

*Larson v. Speetjens*,
    No. C05-3176 SBA, 2006 WL 2567873 (N.D. Cal. Sept. 5, 2006).............19

*Martinez v. BaronHR, Inc.*,
    No. B296858, 2020 WL 3819180 (Cal. Ct. App. 2d Dist. July 8, 2020)........9

*Medical Air Technology Corp. v. Marwan Investment, Inc.*,
    303 F.3d 11 (1st Cir. 2002) ...........................................................................20

*Melo v. Zumper, Inc.*,
    439 F. Supp. 3d 683 (E.D. Va. 2020)..............................................................9

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017)...............................................................................9

*Miller v. Time Warner Cable Inc.*,
    No. 8:16-cv-00329, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016).............12

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
    111 Cal. Rptr. 3d 876 (Cal. Ct. App. 6th Dist. 2010)...................................19

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) .............................................................................................8

*Mundi v. Union Security Life Insurance Co.*,
    555 F.3d 1042 (9th Cir. 2009)...................................................................17, 19

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014)..........................................................................8

*Norcia v. Samsung Telecommunications America, LLC*,
    845 F.3d 1279 (9th Cir. 2017)..........................................................................9

*Oracle America, Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013)........................................................................12

*Parada v. Superior Court*,
    98 Cal. Rptr. 3d 743 (Cal. Ct. App. 4th Dist. 2009) .....................................14

*Paster v. Putney Student Travel, Inc.*,
    No. CV 99-2062, 1999 WL 1074120 (C.D. Cal. June 9, 1999)....................16

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ..............................................................................................8

*Rock v. Solar Rating & Certification Corp.*,
    No. 8:17-CV-3401, 2018 WL 3750617 (D.S.C. July 23, 2018) ...............9, 15

*Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*,
    957 F. Supp. 150 (N.D. Ill. 1997).............................................................15, 16

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014),
    *aff'd*, 840 F.3d 1016 (9th Cir. 2016) .............................................................10

*U.S. ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*,
    750 F.2d 1422 (9th Cir. 1985).........................................................................20

*Yan Ma v. TransUnion LLC*,
    No. CV 18-04095, 2018 WL 6177229 (C.D. Cal. Sept. 21, 2018).........20, 22

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015).............................................................12

**STATUTES, RULES, AND REGULATIONS**

9 U.S.C. § 3........................................................................................................1, 7

**OTHER AUTHORITIES**

5 Williston on Contracts § 9:14 (4th ed. 2007) ......................................................16

1

## INTRODUCTION

2      This case is about the administration of Advanced Placement (AP) exams in

3   May 2020 during a pandemic.  The AP is typically a pencil-and-paper test,

4   administered in schools.  Covid-19 changed that.  In March 2020, schools abruptly

5   closed, leaving College Board and students without test sites.  Rather than cancel the

6   administration outright, College Board undertook the substantial task of creating a

7   new, remotely administered test—at a time when College Board's own offices were

8   closed and its employees were quarantined.  To support students, College Board also

9   developed free online AP prep classes, distributed more than 7,500 laptops, tablets,

10   and internet hotspots to needy students, and made extended time accommodations to

11   students with disabilities.  When testing began, a small percentage of test takers

12   experienced technical difficulties uploading their answers.  College Board offered

13   eligible test takers alternate answer submission options and free make up exams.

14      Despite these efforts, Plaintiffs—a group of students and an organization

15   opposed to standardized testing—filed this putative class action asserting fifteen

16   causes of action on behalf of five separate classes, contending that the administration

17   of the May 2020 AP fell short of their expectations.

18      Whatever the merits (or lack thereof) of Plaintiffs' claims, Plaintiffs bring them

19   in the wrong forum.  In connection with the May 2020 AP exam, Plaintiffs agreed to

20   abide by certain terms and conditions, which allow College Board to ensure that

21   exams are administered fairly, outcomes are reliable, and disputes are resolved

22   quickly and appropriately.  Among those terms is a provision mandating arbitration of

23   any disputes between the parties.  Plaintiffs nonetheless filed this action in federal

24   court, in contravention of the parties' agreement.

25      The parties' written arbitration agreement should be enforced, and the case

26   should be stayed under the Federal Arbitration Act, 9 U.S.C. § 3.  Any challenge to

27   the arbitrability of this dispute belongs with the arbitrator and not this Court, because

28   the arbitration agreements unequivocally delegate such questions to the arbitrator.

Regardless of who decides, the arbitration agreements are enforceable, as their terms are clear and fair, and plainly cover this dispute.  Plaintiffs cannot resist arbitration on any cognizable ground.

Last, while FairTest is not a signatory to the arbitration agreement, it should nevertheless be bound by it.  FairTest asserts that it represents the interests of students, it brings claims that are entirely derivative of the individual test-taker Plaintiffs, and it purports to enforce the contract between individual test-taker Plaintiffs and College Board.  It cannot claim the benefits of the contract while simultaneously attempting to avoid the obligations the contract imposes.

The motion to stay these proceedings in favor of arbitration should be granted.

## STATEMENT OF FACTS

### A.    The Parties

College Board is a New York-based nonprofit membership organization that owns and administers the AP exam.  *See* Am. Compl. ¶ 28, ECF 15.[1]  Educational Testing Service (ETS) is a New Jersey-based nonprofit educational testing and research organization responsible for assisting with the administration of the AP exam under a contract with College Board.  *See* Am. Compl. ¶ 27.

Plaintiff National Center for Fair & Open Testing (FairTest) is a Massachusetts-based organization with an anti-standardized testing mission.  *See* Am. Compl. ¶¶ 15, 116.

Eleven individual test takers—suing on their own behalf or through their parents—filed this Complaint anonymously, using their initials (the Test-Taker Plaintiffs).  Six Test-Taker Plaintiffs reside in California.  Specifically, J.P. is a California-based parent who brings suit on behalf of her son R.P., a student "who

---

[1] The Amended Complaint incorrectly identifies College Board as The College Entrance Examination Board and Educational Testing Service as Educational Testing Services.  This motion refers to both Defendants by their correct names.

1   registered for and intended to take AP Exams."  Am. Compl. ¶ 22.  D.K. is a

2   California-based student "who registered for and intended to take AP Exams."  Am.

3   Compl. ¶ 16.  S.N. is a California-based parent who brings suit on behalf of her

4   daughter C.M., a "student who registered for and intended to take AP Exams."  Am.

5   Compl. ¶ 17.  A.K. is a California-based student who "registered for and intended to

6   take AP Exams."  Am. Compl. ¶ 23.  M.S. is a California-based parent who brings suit

7   on behalf of her minor daughter Z.S., a "student who registered for and intended to

8   take the AP Exams."  Am. Compl. ¶ 25.  L.D. is a California-based parent who brings

9   suit on behalf of her minor son J.D., a "student who registered for and intended to take

10   AP Exams."  Am. Compl. ¶ 26.

11         Five Test-Taker Plaintiffs reside outside California.  P.C. is a New Hampshire-

12   based parent who brings suit on behalf of his son N.C., a "student who registered for

13   and intended to take AP Exams."  Am. Compl. ¶ 18.  C.T. is a South Carolina-based

14   parent who brings suit on behalf of her son S.T., a "student who registered for and

15   intended to take AP Exams."  Am. Compl. ¶ 19.  C.W. is a Virginia-based parent who

16   brings suit on behalf of her minor daughter M.W., a "student who registered for and

17   intended to take AP Exams."  Am. Compl. ¶ 20.  D.M. is a Pennsylvania-based parent

18   who brings suit on behalf of her son L.B., a "student who registered for and intended

19   to take AP Exams."  Am. Compl. ¶ 21.  R.G. is a Pennsylvania-based parent who

20   brings suit on behalf of her minor son J.G., a "student who registered for and intended

21   to take AP Exams."  Am. Compl. ¶¶ 24, 124.

22         **B.    The AP Agreements**

23         The AP is a standardized test; if a student performs well enough, she or he may

24   earn college credit or advanced placement in a variety of subject areas.  *See* Am.

25   Compl. ¶ 45.

26         College Board's website allows students to access exam preparation materials

27   and view or modify exam registration information.  Clewley Decl. ¶ 5.  Those tools

28   are available on myap.collegeboard.org (My AP).  *Id.*  As the Complaint

acknowledges, "Upon registration for the AP Exams, the Class Members entered into an agreement with Defendants[.]"  Am. Compl. ¶ 145.  Indeed, when Test-Taker Plaintiffs first logged into My AP, they were prompted with the My AP Terms. Clewley Decl. ¶ 5.  The terms were visible in a window that a user could manipulate via scrollbars.  *Id.* ¶ 6.  Students could not access myap.collegeboard.org unless they clicked the box indicating "I have read and accept the terms of service," which appeared directly below a window containing the terms, as depicted here.  *Id.* ¶ 7. Once the student clicked that box, the "Continue" button became operational, and the student was able to click "Continue" in order to access My AP.  *Id.*  As set forth in detail in the Clewley Declaration, each of the Test-Taker Plaintiffs agreed to the My AP Terms of Service, which contained an arbitration provision.  *Id.* ¶¶ 8-9.



Specifically, the My AP Terms of Service provided that "all student disputes against College Board and/or any or all of its contractors, that relate in any way to registering for or taking part in a College Board program such as AP or Pre-AP,

including but not limited to requesting or receiving test accommodations, score reporting, and the use of test taker data, shall exclusively be resolved by a single arbitrator through binding, individual arbitration administered by the American Arbitration Association ('AAA') under the AAA Consumer Arbitration Rules in effect at the time a request for arbitration is filed with the AAA."  Clewley Decl. ¶ 6, Ex. 1 (hereinafter "My AP Terms") ¶ 17.[2]  The provision also barred class or collective actions.  *Id.*

Separate from and independent of their agreement to the My AP Terms, students were required to agree to AP Exam Terms and Conditions on exam day.  One week before the exam, College Board sent test takers an email that listed the exams the student was registered for, offered an interactive "exam demo," and encouraged test takers to review the terms and conditions in advance of test day, when they would be asked to acknowledge their consent before proceeding.  Clewley Decl. ¶¶ 10-16.  The interactive exam demo required students to click "I agree to the Terms and Conditions" before continuing with the exam.  *Id.* ¶ 14.  Likewise, on exam day, test takers could not press "Continue" and enter the exam until they clicked the box adjacent to the words "I agree to the Terms and Conditions."  *Id.*  As depicted below, the phrase "Terms and Conditions" was hyperlinked, so if test takers clicked the link during the demo or on the exam, they were taken to the AP Exam Terms and Conditions, which contained an arbitration provision.  *Id.* ¶ 15; *see also id.* ¶¶ 12-13.

---

[2] *See* My AP Terms, https://apcentral.collegeboard.org/pdf/terms-service-my-ap.pdf.

Specifically, the AP Exam Terms and Conditions provided: "All disputes between you and College Board and/or any or all of its contractors that relate in any way to registering for or taking the AP Exam, including but not limited to requesting or receiving test accommodations, score reporting, the use of your data, test security issues, or the Score Validity Process, but excluding all claims that a party violated the intellectual property rights of the other party, shall exclusively be resolved by a single arbitrator through binding, individual arbitration administered by the American Arbitration Association ('AAA') under the AAA Consumer Arbitration Rules in effect at the time a request for arbitration is filed with the AAA."  Clewley Decl. ¶¶ 12-13, Ex. 2 (hereinafter "AP Exam Terms") ¶ 8.[3]  Like the My AP Terms, the AP Exam Terms bar "class or collective actions."  *Id.*  All nine Test-Taker Plaintiffs who sat for the AP exam in May 2020 agreed to these terms on test day.[4]

---

[3] *See also* AP Exam Terms and Conditions, https://apcoronavirusupdates.collegeboard.org/ap2020-terms-and-conditions.

[4] The following Test-Taker Plaintiffs agreed to the AP Exam Terms: N.C., J.D., J.G., D.K., C.M., R.P., Z.S., S.T., and M.W.  Clewley Decl. ¶ 17.  Although Test-Taker Plaintiffs L.B. and A.K. did not take the May 2020 AP exam and so did not agree to the AP Exam Terms, they did agree to the My AP Terms.  *See id.* ¶¶ 9, 19.

1

## C.     This Lawsuit

Notwithstanding each Test-Taker Plaintiff's agreement to arbitrate "[a]ll student disputes … that relate in any way to registering for or taking part in a College Board program such as AP or Pre-AP," My AP Terms ¶ 17; *see also* AP Exam Terms ¶ 8, Plaintiffs filed this Amended Complaint in federal court asserting fifteen causes of action.  And despite the bar on collective or class actions, *id.*, Plaintiffs filed suit on behalf of five putative classes, Am. Compl. at pp. 41-43.  Plaintiffs assert that Defendants failed to "fairly, competently, or equitably administer" the AP Exam developed for use during the Covid-19 pandemic because the tests purportedly had "technical glitches, timing issues, [and] access issues[.]"  Am. Compl. ¶ 10.  Plaintiffs seek compensatory and punitive damages as well as an injunction requiring Defendants to score ineligible exams.  Am. Compl. at p. 55.

## ARGUMENT

The Federal Arbitration Act (FAA) requires that, "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011).  This federal policy mandates that courts "'rigorously enforce' arbitration agreements according to their terms," *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013), and that "any doubts concerning the

1  scope of arbitrable issues [must] be resolved in favor of arbitration," *Moses H. Cone*

2  *Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

3      Typically, "the question of whether the parties agreed to arbitrate is to be

4  decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of*

5  *Am.*, 475 U.S. 643, 649 (1986).  However, "parties can agree to arbitrate 'gateway'

6  questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or

7  whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v.*

8  *Jackson*, 561 U.S. 63, 68-70 (2010).  "[An] agreement to arbitrate a gateway issue is

9  simply an additional, antecedent agreement the party seeking arbitration asks the

10 federal court to enforce, and the FAA operates on this additional arbitration agreement

11 just as it does on any other." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.

12 Ct. 524, 529 (2019) (quoting *Rent-A-Center*, 561 U.S. at 70).

13     Where, as here, the parties' agreement explicitly incorporates the American

14 Arbitration Association's (AAA) rules, which empower an arbitrator to decide

15 questions of arbitrability, this incorporation "constitutes clear and unmistakable

16 evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus*

17 *Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  This Court's inquiry is therefore limited

18 to determining whether the parties formed an agreement to arbitrate.  Because they

19 did, the Court should stay this action pending arbitration.

20 **I.     The Parties Agreed To Arbitrate This Dispute**

21     "The FAA limits the district court's role to determining whether a valid

22 arbitration agreement exists, and whether the agreement encompasses the disputes at

23 issue." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

24 Because the parties entered into a valid arbitration agreement that covers this dispute,

25 the litigation should be stayed pending arbitration.

26     **A.     The Parties Formed An Agreement To Arbitrate**

27     "In determining whether a valid arbitration agreement exists, federal courts

28 apply ordinary state-law principles that govern the formation of contracts." *Nguyen*,

763 F.3d at 1175.  Under California law, "[a]n essential element of any contract is the consent of the parties or mutual assent."  *Martinez v. BaronHR, Inc.*, No. B296858, 2020 WL 3819180, at *3 (Cal. Ct. App. 2d Dist. July 8, 2020).  "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."  *Id.*  "A party who is bound by a contract is bound by all its terms, whether or not the party was aware of them."  *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017).

These rules apply equally for contracts made online.  Courts "have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract … as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law and upholding the enforceability of an arbitration clause contained within an agreement made available by hyperlink).[5]

Here, each Test-Taker Plaintiff manifested his or her assent to the My AP Terms by clicking a box near text that read "I have read and accept the terms of service."  Clewley Decl. ¶¶ 7-9.  The agreement text was readily accessible, displayed in a directly adjacent window that a user could scroll to read, and thus the layout and language of the website gave Test-Taker Plaintiffs ample notice that a click manifested assent to the agreement.  *See Dohrmann v. Intuit, Inc.*, No. 20-15466, 2020

---

[5] While some Plaintiffs reside outside California, there is no relevant, material difference under their states' laws.  *See, e.g.*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 238 (E.D. Pa. 2007) (enforcing internet agreement where user clicked yes to "indicate[] assent to the terms," which required arbitration); *Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401, 2018 WL 3750617, at *5 (D.S.C. July 23, 2018) (same), *adopted by* 2018 WL 3745057 (D.S.C. Aug. 7, 2018); *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 699 (E.D. Va. 2020) (same); *Landry v. Time Warner Cable, Inc.*, No. 16-CV-507-SM, 2018 WL 4697578, at *3 (D.N.H. Sept. 27, 2018) (enforcing electronically signed arbitration agreement).

WL 4601254, at *2 (9th Cir. Aug. 11, 2020) (enforcing internet arbitration agreement where user had to sign in alongside text that read "By clicking Sign In, you agree to the … Terms of Use" where the terms of use were blue hyperlinks linking to the terms).  In addition, the nine Test-Taker Plaintiffs who sat for the May 2020 AP exam further reaffirmed that agreement on exam day by clicking a box near text that read "I agree to the Terms and Conditions." Clewley Decl. ¶¶ 14, 16.  The phrase "Terms and Conditions" was a hyperlink, which opened the terms when clicked. *Id.* ¶ 15. Here too, Test-Taker Plaintiffs agreed to the AP Exam Terms.  Courts routinely find that such online contracts are fully enforceable where, as here, the user was provided notice and an opportunity to review the terms before accepting them.[6]  Indeed, the Complaint admits that Plaintiffs entered into enforceable agreements with College Board.  *See* Am. Compl. ¶ 145 ("Upon registration for the AP Exams, the Class Members entered into an agreement with Defendants[.]").

## B.     This Dispute Is Covered By The Arbitration Agreement

The arbitration agreement applies, with two exceptions not relevant here,[7] to "*all* student disputes … that relate *in any way* to registering for or taking part in a College Board program such as AP or Pre-AP, including but not limited to requesting or receiving test accommodations, [or] score reporting[.]"  My AP Terms ¶ 17 (emphasis added); AP Exam Terms ¶ 8 ("All disputes between you and College Board

---

[6] *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (holding that users assented to Facebook user agreement by checking a box affirming agreement to Terms of Use or by clicking "Sign Up" button that referenced Terms of Use, even without separate evidence users had reviewed or accessed Terms of Use); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682, 2014 WL 2903752, at *7-9, *18 (N.D. Cal. June 25, 2014) (granting motion to compel arbitration where online registration required user to confirm acceptance of terms of service), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

[7] The arbitration provision excludes "score validity investigations" and "College Board's intellectual property rights."  Neither issue is present in this case.

---

… that relate in any way to registering for or taking the AP Exam[.]").  This dispute plainly falls within the arbitration agreement for at least two reasons:  First, this lawsuit arises from Plaintiffs' dissatisfaction with the May 2020 AP, which relates to "taking part in a College Board program such as AP" or "registering for or taking the AP Exam."  Second and more specifically, some Plaintiffs complain of College Board's disability accommodations, and thus this litigation also relates to "requesting or receiving test accommodations."  AP Exam Terms ¶ 8; *accord* My AP Terms ¶ 17. Furthermore, the arbitration agreement encompasses disputes with College Board and "any or all of its contractors," My AP Terms ¶ 17; AP Exam Terms ¶ 8, which covers claims against ETS.

### C.   The Parties Delegated Questions Of Arbitrability To The Arbitrator

As just shown, the parties entered into a binding arbitration provision that clearly covers this dispute; that should be the end of the analysis.  Should Plaintiffs wish to mount any challenge to the interpretation or enforceability of the arbitration provision, that issue would be for the arbitrator, not this Court, to decide.  To be sure, typically "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *AT&T Techs*., 475 U.S. at 649.  Questions of arbitrability may be delegated to the arbitrator, however, if there is "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

Here, the AP terms contain broad language that requires arbitration of "[a]ll disputes," which necessarily includes disputes over arbitrability.  AP Exam Terms at 1 ("All disputes between you and College Board will be resolved through binding arbitration in accordance with Section 8 of this Agreement."); *id.* ¶ 8; My AP Terms ¶ 17; *see Dvorsky v. Axis Glob. Sys., LLC*, No. CV 17-422, 2017 WL 7079459, at *2 (C.D. Cal. June 15, 2017) (agreement providing arbitration for "[a]ny and all disputes" was sufficient to delegate threshold issues to arbitrator).

Moreover, the AP terms provide that arbitration will be conducted under the Consumer Rules of the AAA, and they provide a link to the AAA website to locate the AAA Rules.  My AP Terms ¶ 17; AP Exam Terms ¶ 8.  The AAA Consumer Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Rules, Rule 14(a).  As courts have held time and again, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130; *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

While *Brennan* involved arbitration between two sophisticated parties, it made clear that its holding "does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts."  *Brennan*, 796 F.3d at 1130.  And since *Brennan*, most courts considering the question have applied the rule to unsophisticated parties.  *See Gountoumas v. Giaran, Inc*., No. CV 18-7720, 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) (agreeing "with the majority view, and conclud[ing] that incorporation of AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability, even if one or more of the parties are unsophisticated"); *Miller v. Time Warner Cable Inc*., No. 8:16-cv-00329, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties."); *Zenelaj v. Handybook Inc*., 82 F. Supp. 3d 968, 973-74 (N.D. Cal. 2015) (collecting cases); *Brinkley v. Monterey Fin. Servs., Inc.*, 196 Cal. Rptr. 3d 1, 34 (Cal. Ct. App. 4th Dist. 2015) (consumer class action).

## II.      There Is No Basis For Plaintiffs To Resist Arbitration

As discussed above, the parties entered into a written arbitration agreement that covers this dispute and clearly and unmistakably delegates questions about enforceability and arbitrability to the arbitrator.  Any challenges plaintiffs may wish to make to the arbitration agreement should accordingly be referred to the arbitrator.  Nevertheless, in the interest of completeness, Defendants address arguments likely to be raised.

### A.      The Arbitration Agreement Is Not Unconscionable

The arbitration agreement is not unconscionable.[8]  "Under California law, both procedural and substantive unconscionability must be present to find a contract unconscionable."  *Capili v. Finish Line, Inc.*, 699 F. App'x 620, 621 (9th Cir. 2017).

As for procedural unconscionability, the arbitration clause was presented conspicuously to test takers under clear subheadings and "written in clear, unambiguous language."  *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 347 (Cal. Ct. App. 2d Dist. 2010).  The AP Exam Terms stated on the first page and in bold text that "All disputes between you and College Board will be resolved through binding arbitration in accordance with Section 8 of this Agreement."  Likewise, the My AP Terms listed the arbitration provision under a clearly-labeled section header entitled "disputes."  Test takers also had ample time and opportunity to read the arbitration provisions.  The terms were provided on at least three separate occasions.  First, they were displayed in a scrollable window through the My AP registration process.  Clewley Decl. ¶¶ 5-6.  Second, they were emailed to test takers in advance of exam

---

[8] The parties delegated disputes over unconscionability to the arbitrator.  *See Cipolla v. Team Enters., LLC*, 810 F. App'x 562, 563 (9th Cir. 2020) (a court should not consider "substantive unconscionability challenges" where the agreement delegates gateway issues of arbitrability to the arbitrator).

day.  *Id*. ¶¶ 10-12.  Third, they were provided on exam day.[9]  *Id*. ¶¶ 14-16.  And while test takers must agree to AP terms, including the arbitration provisions, in order to register for My AP or to take the test, "the compulsory nature of a predispute arbitration agreement does not render the agreement unenforceable."  *Giuliano v. Inland Empire Pers., Inc*., 58 Cal. Rptr. 3d 5, 18 (Cal. Ct. App. 2d Dist. 2007); *see also Doe #1 v. College Board*, 440 F. Supp. 3d 349, 356-57 (S.D.N.Y. 2020) (rejecting procedural unconscionability argument because "the fact that student test takers were required to agree to the [terms] including the Arbitration Provision, to sit for the SAT exam does not render the contract one of adhesion").

Nor are the arbitration terms "so one-sided as to shock the conscience," which is required to show substantive unconscionability.  *Parada v. Super. Ct*., 98 Cal. Rptr. 3d 743, 759 (Cal. Ct. App. 4th Dist. 2009).  The arbitration agreement incorporates the AAA rules, which courts recognize as a suitable alternative to a judicial forum. *See Archer v. TIC-The Indus. Co*., No. 16 Civ. 6649, 2016 WL 7635956, at *6 (C.D. Cal. Nov. 7, 2016) (rejecting unconscionability challenge because "the rules of the AAA are [widely] regarded to be neutral and fair" (cleaned up)); *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 88 Cal. Rptr. 2d 664, 680 (Cal. Ct. App. 2d Dist. 1999) ("The rules of the American Arbitration Association specified by the clause as governing the resolution of disputes are generally regarded to be neutral and fair."); *Fensterstock v. Educ. Fin. Partners*, No. 08 Civ. 3622, 2012 WL 3930647, at *7 (S.D.N.Y. Aug. 30, 2012) (rejecting argument that AAA-managed arbitration was substantively unconscionable under California law); *see also College Board*, 440 F.

---

[9] Test takers could also review the terms in the interactive exam demo.  Clewley Decl. ¶ 14.  And because several test takers took multiple AP exams, they would have reviewed the terms several more times.  *Id*. ¶ 18.  Also, test takers encountered the terms at least two times in non-exam settings, where test takers could spend days (if they wished) reviewing the agreement or consulting an attorney or parent.  *See id*. ¶¶ 6, 10, 14.  In short, test takers had ample time to review the relevant terms, including the arbitration agreement.

Supp. 3d at 357 (rejecting substantive unconscionability argument against similar SAT terms and conditions that bound "both parties equally to arbitration").[10]

### B. Plaintiffs' Youth Does Not Invalidate The Arbitration Agreement

Nor are the arbitration agreements unenforceable because some test takers are minors. Arbitration clauses are routinely enforced against minors like those who brought this litigation. In fact, a court in this District has upheld an arbitration agreement in the specific context of standardized testing. *Bloom v. ACT, Inc.*, No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018), ECF No. 86 (staying litigation pending arbitration where minors agreed to arbitrate claims when registering for the ACT); *see also Durrett v. ACT, Inc.*, 310 P.3d 1047 (Haw. Ct. App. 2011) (staying litigation and compelling arbitration where minor student agreed to arbitrate claims upon registering for ACT exam). Courts have also enforced College Board's similar SAT arbitration agreement against minor plaintiffs. *College Board*, 440 F. Supp. 3d at 356 (staying litigation pending arbitration where minors agreed to arbitrate claims when registering for the SAT). Enforcement is especially appropriate where, as here, the minor plaintiffs are near adulthood. *See, e.g.*, *Douglass v. Pflueger Hawaii, Inc.*, 135 P.3d 129, 138 (Haw. 2006) (because plaintiff was "only one to two years from adulthood[,] capable and competent to contract for gainful employment [he] therefore, should be bound by the terms of such contracts"); *Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150 (N.D. Ill. 1997) (enforcing arbitration clause against minor employee).

---

[10] For unconscionability, there is no material difference between California law and the laws of Pennsylvania, South Carolina, New Hampshire, or Virginia. *See Feldman*, 513 F. Supp. 2d at 240-41 (rejecting unconscionability challenge under Pennsylvania law in part because online form contracts are not necessarily unconscionable "contract[s] of adhesion"); *Rock*, 2018 WL 3750617, at *7 (South Carolina law); *Green v. Kline Chevrolet Sales Corp.*, No. 2:19CV127, 2019 WL 3728266, at *8 (E.D. Va. Aug. 7, 2019) (Virginia law); *Landry*, 2018 WL 4697578, at *3 (New Hampshire law).

More to the point, this is a case in which Plaintiffs press a claim against College Board for enforcement of the AP terms—the parties' contract.  Having explicitly sought to enforce the terms of that contract, Plaintiffs are bound to all of its provisions, including the arbitration agreement.  *See* 5 Williston on Contracts § 9:14 (4th ed. 2007) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations."); *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) (enforcing forum selection clause because plaintiff "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her"); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (enforcing forum selection clause under California law because "a minor cannot take the benefit of the contract without the burden of the conditions or stipulations"); *College Board*, 440 F. Supp. 3d at 356 (holding that minor plaintiffs "are not entitled to argue both that [College Board] breached the T&C … while also claiming the Arbitration Provision" was unenforceable); *Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (enforcing forum selection clause against minor plaintiffs where the "[minors] have already sued to recover on the contract," because "[i]f the minor chooses benefits under the contract, he may not avoid his obligations thereunder"); *Sheller ex rel. Sheller*, 957 F. Supp. at 150 (enforcing arbitration clause against minor). [11] Accordingly, courts routinely compel minors to honor their contractual obligations to

---

[11] *See also, e.g.*, *A.V. v. iParadigms, Ltd. Liab. Co.*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008) ("Plaintiffs received benefits from entering into the Agreement … They received a grade from their teachers, allowing them the opportunity to maintain good standing in the classes in which they were enrolled.  Additionally, Plaintiffs gained the benefit of standing to bring the present suit.  Plaintiffs cannot use the infancy defense to void their contractual obligations while retaining the benefits of the contract."), *aff'd in relevant part, rev'd on other grounds* 562 F.3d 630 (4th Cir. 2009).

arbitrate in like circumstances. *See Bloom*, No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018), ECF No. 86 (enforcing arbitration agreement against minor test takers); *College Board*, 440 F. Supp. 3d at 356 (same); *E.K.D.,* 885 F. Supp. 2d at 899 (enforcing forum selection clause).

## III.   Nonsignatory FairTest Must Arbitrate Its Claims

FairTest did not itself agree to the AP terms, but it should nevertheless be subject to them.  FairTest brings claims dependent on a contract between College Board and Test-Taker Plaintiffs.  It also sues to enforce this very contract.  By seeking to enjoy the benefits of the parties' agreement, FairTest cannot be heard to simultaneously avoid the contract's obligations, namely its arbitration provision.

"[N]onsignatories of arbitration agreements may be bound by [an] agreement under ordinary contract and agency principles."  *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006); *accord GIB, LLC v. Salon Ware, Inc*., 634 F. App'x 610, 611 (9th Cir. 2016).  Among these principles are "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  *Mundi v. Union Sec. Life Ins. Co*., 555 F.3d 1042, 1045 (9th Cir. 2009).

"[N]onsignatories have been held to arbitration clauses where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement."  *Comer*, 436 F.3d at 1101.  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Mundi*, 555 F.3d at 1045.  "A nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are 'dependent upon, or inextricably intertwined with' the underlying contractual obligations of the agreement containing the arbitration clause."  *Jensen v. U-Haul Co. of Cal.*, 226 Cal. Rptr. 3d 797, 806 (Cal. Ct. App. 4th Dist. 2017).  "The focus is on the nature of the claims asserted … That the claims are cast in tort rather than contract does not avoid the arbitration clause."  *Id.*

1    Here, FairTest "knowingly exploits" the agreement by suing to enforce it, and

2 the claims it asserts are "inextricably intertwined" with the contract's subject matter.

3 Plaintiffs, including FairTest, complain of the May 2020 AP, which students could

4 only register for after they agreed to terms that contained an arbitration agreement.

5 Based on those terms, FairTest presses various causes of action.  It alleges two

6 separate contract claims against Defendants, alleging that they breached their

7 supposed "obligation to ensure a fair and equitable opportunity to demonstrate college

8 readiness," Am. Compl. ¶ 145, as a result of which "Plaintiffs" including FairTest

9 "suffered damages," Am. Compl. ¶ 147; *see also* Am. Compl. ¶¶ 149-150.  In

10 addition, FairTest asserts implied contract claims intertwined with Defendants'

11 supposed promise to administer the AP "fairly and equitably," as a result of which

12 "Plaintiffs" including FairTest "were damaged."  Am. Compl. ¶¶ 180-183.  "When [a]

13 plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a

14 party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the

15 plaintiff should be equitably estopped from repudiating the contract's arbitration

16 clause." *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 443 (Cal. Ct.

17 App. 2d Dist. 2011).

18    FairTest also brings several other causes of action that turn on College Board's

19 purported contractual obligation to ensure test takers had "a fair and equitable

20 opportunity to demonstrate college readiness."  Am. Compl. ¶ 145.  For example,

21 Plaintiffs' claim for negligent misrepresentation and breach of fiduciary duty are

22 based in part on the purported contractual promise that AP Exams "would be fairly

23 and equitably offered and administered."  Am. Compl. ¶¶ 158, 185.  And the other

24 causes of action, including consumer fraud and discrimination, arise out of and are

25 inextricably bound with the administration of AP exams, which as explained above,

26 come with certain terms and conditions, including an arbitration agreement.  *See*

27 *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 111 Cal. Rptr. 3d 876, 896

28 (Cal. Ct. App. 6th Dist. 2010) (enforcing arbitration agreement against nonsignatory

because each claim, "whether framed in tort, contract, or equity" is "subject to arbitration because it derives from, relies on, or is intimately intertwined with the subject contract containing the arbitration agreement").

Thus, while FairTest is not a signatory to the contract, it is bound by it because it cannot claim "the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi*, 555 F.3d at 1045; *Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 447 (Cal. Ct. App. 2d Dist. 2005) ("The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate[.]").  Courts routinely stay nonsignatory claims under these circumstances.  *See Evergreen Media Holdings, LLC v. Stroock & Stroock & Lavan LLP*, No. 15-cv-1648, 2015 WL 12765630, at *3 (C.D. Cal. Apr. 16, 2015) (enforcing arbitration agreement against nonsignatory plaintiffs because "[n]otwithstanding their status as technical non-signatories, there is no dispute that [p]laintiffs bring suit expressly to enforce obligations formed under the [agreement]"); *Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, No. C 07-03983, 2008 WL 2397466, at *3 (N.D. Cal. June 11, 2008) ("Here, by moving to enforce their contractual rights, the [nonsignatory defendants] cannot avoid the explicit agreement to arbitrate."); *Larson v. Speetjens*, No. C05-3176 SBA, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006) (compelling nonsignatory plaintiffs to arbitrate because they "cannot seek to enforce the rights the [agreements] provided them and avoid the requirement that any dispute arising out of the [a]greements be arbitrated").[12]

---

[12] The law of other jurisdictions is to the same effect.  *See Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (enforcing arbitration agreement against a nonsignatory where, like here, the nonsignatory "has consistently maintained that other provisions of the same contract should be enforced to benefit him" (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000))); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) ("[C]ourts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the

**IV.    Alternatively, FairTest's Claims Should Be Stayed Pending Arbitration**

All of the Test-Taker Plaintiffs are signatories to a valid arbitration agreement that applies to the entirety of this dispute.  *See supra* Section I.A & I.B.  The FAA "mandates" that such claims "proceed to arbitration."  *Chiron Corp*, 207 F.3d at 1130. If the Court concludes that FairTest's claims are not subject to arbitration, however, "the court may nonetheless stay the entire action."  *Jaffe v. Zamora*, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014).  FairTest does not bring any independent or freestanding claims—all the causes of action are brought, undifferentiated, on behalf of all Plaintiffs.  Therefore, a stay of the entire litigation is appropriate.

In deciding whether to stay the entire action, courts predominantly focus on "considerations of economy and efficiency," *U.S. ex rel. Newton v. Neumann Caribbean Int'l, Ltd*., 750 F.2d 1422, 1427 (9th Cir. 1985), including the "avoid[ance of] simultaneous, piecemeal litigation … in two different forums," *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc*., No. 8:19-cv-00642, 2020 WL 620294, at *12 (C.D. Cal. Jan. 9, 2020).  Courts also consider "the similarity of the issues of law and fact" and whether contemporaneous proceedings raise "the potential for inconsistent findings absent a stay," *Bischoff v. DirecTV, Inc*., 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002), and whether a stay could prevent the "waste [of] judicial resources," *Yan Ma v. TransUnion LLC*, No. CV 18-04095, 2018 WL 6177229, at *3 (C.D. Cal. Sept. 21, 2018).

These factors all militate in favor of a stay of this litigation.  All Plaintiffs (both test takers and FairTest) bring identical, undifferentiated causes of action.  Am. Compl. ¶¶ 144-206 (causes of action asserted by all Plaintiffs against both

---

contract, such as an arbitration clause, that it finds distasteful."); *Med. Air Tech. Corp. v. Marwan Inv., Inc*., 303 F.3d 11, 18 (1st Cir. 2002) ("[S]ome courts have applied a theory of equitable estoppel for suits against non-signatories arising out of the contract itself, reasoning that the party seeking the benefit of a contract could not refuse to be bound by a clause contained within it.").

Defendants).  And all Plaintiffs (both test takers and FairTest) expressly assert that common questions of fact and issues of law predominate over their claims.  Am. Compl. at pp. 44-46.  Given the conceded factual and legal overlap here, a stay of the entire litigation is appropriate.  Indeed, as here, a stay of all claims pending arbitration is "particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate."  *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1303-04 (N.D. Cal. 2018).

Courts in this Circuit routinely stay the entire litigation in analogous circumstances because a stay promotes judicial economy and avoids parallel proceedings and inconsistent findings.  *See Gunawan v. Randstad Gen. Partner (US) LLC*, No. SACV 13-01464, 2013 WL 12142565, at *3 (C.D. Cal. Dec. 16, 2013) (issuing stay to non-arbitrating plaintiff who brought "nearly identical claims" on the basis that "[a]rbitration … is likely to resolve significant factual questions at issue" in the litigation); *Bischoff*, 180 F. Supp. 2d at 1115 (granting stay of non-contracting plaintiffs' claims based on "judicial economy and the desirability of avoiding possible inconsistent findings" where there was great "similarity of the issues of law and fact in this case to those that will be considered during arbitration"); *see also Chartwell Staffing Servs.*, 2020 WL 620294, at *12; *Jaffe*, 57 F. Supp. 3d at 1248.

Courts also consider the equities, weighing "the possible damage which may result from the granting of a stay" against "the hardship or inequity which a party may suffer in being required to go forward."  *Anderson v. Salesforce.com, Inc.*, No. 18-CV-06712, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  This too counsels in favor of a complete stay.  Plaintiffs would suffer no prejudice from a stay in this case—there is no risk of spoliation to FairTest, and arbitration is likely to produce a faster and cheaper resolution of claims for every Test-Taker Plaintiff.  By contrast, if a stay were denied, Defendants would be left to simultaneously pursue arbitration against some and litigation against others, and face the potential of inconsistent results.  *See Yan Ma*,

2018 WL 6177229, at \*3 (explaining that parallel proceedings "waste judicial resources and [are] burdensome upon the parties" whereas a stay during early stages of litigation "will not have a particularly adverse effect on any of the parties").[13]

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to stay litigation in favor of arbitration.

Dated:  August 31, 2020

*/s/ Matthew D. Benedetto*
Matthew D. Benedetto (SBN 252379)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5323
Fax: (213) 443-5400
matthew.benedetto@wilmerhale.com

Alan E. Schoenfeld
(pending admission *pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8851
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

*Counsel for Defendants*

Bruce M. Berman
(pending admission *pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6173
Fax: (202) 663-6363
bruce.berman@wilmerhale.com

---

[13] To the extent the Court finds that any other party or claim is not subject to arbitration, the Court should, for the same reasons articulated above, stay the non-arbitrable claims pending completion of the arbitrable issues in this case.