PHILLIP A. BAKER, BAR ID #169571
pbaker@bknlawyers.com
DERRICK S. LOWE, BAR ID #267998
dlowe@bknlawyers.com
BAKER, KEENER & NAHRA LLP
633 West 5th Street, Suite 5500
Los Angeles, California 90071
Telephone: (213) 241-0900/Facsimile: (213) 241-0990

MARCI LERNER MILLER, BAR ID # 162790
marci@milleradvocacy.com
CHRISTINA N. HOFFMAN, BAR ID #161932
choffman@milleradvocacy.com
MILLER ADVOCACY GROUP
1303 Avocado Avenue, Suite 230
Newport Beach, California 92660
Telephone: (949) 706-9734/Facsimile: (949) 266-8069

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Plaintiff J.P. on behalf of her minor son R.P., and all others similarly situated; THE NATIONAL CENTER FOR FAIR & OPEN TESTING doing business as FAIRTEST, a Massachusetts corporation; A.K., individually and on behalf of all others similarly situated; R.G. on behalf of her minor son J.G., and all others similarly situated; Plaintiff M.S. on behalf of her minor daughter Z.S., and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>EDUCATIONAL TESTING SERVICES (ETS), a New York corporation; THE COLLEGE ENTRANCE EXAMINATION BOARD, a New York corporation, doing business as THE COLLEGE BOARD; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:2:20-cv-04502-PSG (PVCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO RE-OPEN LITIGATION PURSUANT TO COURT ORDER**<br><br>**[Concurrently filed with Plaintiffs' Notice of Motion to Re-Open and other supporting Declarations; Proposed Order]**<br><br>**Date:  April 5, 2021**<br>**Time: 1:30 p.m.**<br>**Judge Philip S. Gutierrez**<br>**Courtroom: 6A** |

///

///

899-5656-0001

MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION

# **TABLE OF CONTENTS**

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

1. INTRODUCTION ...............................................................................................1

2. FACTUAL SUMMARY ......................................................................................1

3. NO AP EXAM TERMS EXIST FOR THE AP EXAMS AT ISSUE
   HERE .................................................................................................................2

4. DEFENDANTS ONLY PRODUCED EVIDENCE PERTAINING TO
   RESCHEDULED OR UNRELATED AP EXAM DATES, NOT AP
   EXAMS AT ISSUE .............................................................................................3

5. NEW EVIDENCE FROM DEFENDANTS SHOWS THAT AP
   EXAMS AT ISSUE WERE RESCHEDULED, NOT TAKEN ..........................6

6. EXAMS AT ISSUE WERE NOT TAKEN AND LACK MUTUALITY .........10

7. PLAINTIFFS DISAFFIRM THE AP EXAM TERMS AT ISSUE ..................11

8. DISCRIMINATORY ADMINISTRATION OF 2021 AP EXAMS.................15

9. NEW EVIDENCE WITHIN DEFENDANTS' CONTROL SUPPORTS
   A RELIEF FROM THE STAY AND REOPENING OF THE
   LITIGATION.....................................................................................................18

10. PLAINTIFFS WHO WERE NEVER ORDERED TO ARBITRATION
    MUST BE PERMITTED TO PROCEED IN COURT ON THEIR OWN
    BEHALF AND ON BEHALF OF A MILLION OTHER STUDENTS...........19

11. THE ARBITRABLE CLAIMS DO NOT HAVE A PRECLUSIVE
    EFFECT ON THE NONARBITRABLE CLAIMS .........................................23

12. CLAIMS FOR PUBLIC INJUNCTIVE RELIEF MUST PROCEED..............24

13. CONCLUSION..................................................................................................25

- i -

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Duncan*,
972 F.2d 523 (1992).................................................................12

*Anderson v. Credit One Bank, Nat'l Ass'n*,
2018 WL 2287329 (S.D. Cal. May 18, 2018) ....................................19

*In re Arrowhead Estates Dev. Co.*,
42 F.3d 1306 (9th Cir. 1994) .......................................................18

*Bain v. MJJ Productions, Inc.*,
751 F.3d 642 (2014)..................................................................19

*Belyea v. GreenSky Inc.*,
2020 WL 3618959 (N.D. Cal. July 2, 2020) ......................................2

*Berg v. Traylor*,
148 Cal.App.4th 809 (2007) ........................................................14

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) .......................................................24

*Celli v. Sports Car Club of Am., Inc.*,
29 Cal.App.3d 511 (1972) ..........................................................14

*Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*,
567 F.3d 1191 (10th Cir. 2009) ....................................................23

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......................................................21

*Coughenour v. Del Taco, LLC*,
57 Cal.App.5th, 740 (2020) ...............................................12, 13, 14

*Hamid v. Nike Retail Servs., Inc.*,
2018 WL 1684316 (C.D. Cal. Apr. 6, 2018) .....................................19

*McArdle v. AT&T Mobility LLC*,
772 F. Appx. 575 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 2827, 207 L. Ed. 2d 159 (2020) ..................................................................24

*McArdle v. AT&T Mobility LLC*,
   772 Fed. Appx. 575 (9th Cir. 2019).................................................24

*McGill v. Citibank, N.A.*,
   2 Cal.5th 945 (2017) ..............................................................24, 25

*Osterneck v. Ernst & Whinney*,
   489 U.S. 169 (1989)................................................................18

*Porter v. Wilson*,
   106 N.H. 270 271 (1965) .........................................................12

*Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*,
   157 F.3d 775 (10th Cir. 1998) ...................................................23

*Scollan v. Gov't Emps. Ins. Co.*,
   222 Cal.App.2d 181 (1963) ......................................................14

*Snarr v. HRB Tax Grp., Inc.*,
   2020 WL 7249334 (9th Cir. Dec. 9, 2020).....................................25

*Sparks v. Sparks*,
   101 Cal.App.2d 129 (1950) ......................................................14

*Tillage v. Comcast Corp.*,
   772 Fed. Appx. 569 (9th Cir. 2019).............................................24

*Wooldridge v. Laroie*,
   79 N.H. 21 .........................................................................12

*Zelnick v. Adams*,
   263 Va. 601 (2002) ...............................................................12

**Constitutions**

South Carolina Constitution, Article XVII § 14 ...................................12

**Statutes**

23 PA Cons. Stat § 5101 ............................................................12

*9 U.S.C. § 2* ...................................................................2, 11

*Cal. Fam. Code § 6710* ........................................................13, 14

*Cal. Family Code § 6700* .........................................................13

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

*Cal. Family Code §§ 6700-6701* ...............................................................................14

California's Unfair Competition Laws. *Cal. Civ. Code § 3513* ...............................25

S.C. Children's Code § 63-5-310 ............................................................................12

Federal Arbitration Act ................................................................................ 1-3, 6, 11

M.G.L.A. 231, § 85O .............................................................................................12

**Court Rules**

Local Rule 7-18 ......................................................................................................19

Local Rule 7.1.i.1 ...................................................................................................18

Rule 60(b) .........................................................................................................18, 19

Rule 60 (b)(2) .........................................................................................................19

**Other Authorities**

Johnson, Sydney. "White Students in California More Likely to Be Getting
    in-Person Instruction than Black, Latino and Asian Students." .......................18

Tate, Emily. "College Board Changes AP Exams Again to Accommodate
    Pandemic-Era Testing - EdSurge News." ........................................................15

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### 1.   <u>INTRODUCTION</u>.

On October 30, 2020, the Court ruled on the Motion to Compel Arbitration and Stay Further Proceedings Under the Federal Arbitration Act (the "Arbitration Motion") filed by Defendants Education Testing Services ("ETS") and The College Entrance Examination Board d/b/a The College Board (together, "Defendants").  The Arbitration Motion was granted in part and denied in part, the Court stayed the case pending the arbitrable claims of some of the parties, and the Court further ruled that the case may be reopened by application of any party.  The National Center for Fair & Opening Testing ("FairTest") and the individually named plaintiff students (the "Student Plaintiffs"), collectively the "Plaintiffs," present this Motion to Re-Open Litigation (the "Motion") pursuant to this Court's ruling.

### 2.   <u>FACTUAL SUMMARY</u>.

This lawsuit was brought on behalf of millions of students who were forced to take their Advanced Placement Exams ("AP Exams") at home during the COVID-19 pandemic.  This lawsuit is also brought on behalf of possibly a million more students who were unable to even access the AP Exams at all because of (a) their disabilities or special needs, (b) their remote location or home environment, (c) their status as a homeschooler, charter school student, or non-test approved school, or (d) their lack of technological platforms or digital access.

Defendants brought the Arbitration Motion in an attempt to enforce two separate arbitration agreements, one that Student Plaintiffs were presented with when initially accessing their classroom materials prior to the pandemic (the "My AP Agreement"), and another set of terms that students were presented with upon taking their online AP Exams at home (the "AP Exam Terms"). When Student Plaintiffs initially accessed their classroom AP curriculum, they were prompted to agree to the My AP Agreement. **(See Declaration of James A. Clewley, Jr. in Support of Defendants' Arbitration Motion ("Clewley Decl."), Dkt. 21-1 at ¶ 5)**.  The Court found that the arbitration clause

899-5656-0001

---

contained in the My AP Terms was unenforceable as to all of the Plaintiffs and denied Defendants' Arbitration Motion as to the My AP Agreement in its entirety.

Not all Student Plaintiffs were able to register for their AP Exams after taking their AP courses and not all who registered and paid were able to take all of their AP Exams. However, Student Plaintiffs who actually took their AP Exams were presented with the AP Exam Terms, which contained a second arbitration clause, each time they took an exam. The Court found that Student Plaintiffs who never accepted the AP Exam Terms at all could not be compelled to arbitrate their claims. The Court further found that the AP Exam Terms only applied to registering for and taking one particular exam and did not apply retroactively to cover past exams that were not taken. The claims made by Plaintiffs who had no claims subject to arbitration were stayed pending the arbitration of the of the arbitrable claims. Lastly, the Court found that FairTest's claims are dependent upon, and tied to, the Student Plaintiffs' claims.

The Court held that the case could be re-opened by application of any party and, as there are no arbitrable claims remaining, Plaintiffs apply to re-open the case in accordance with the Court's ruling.

## 3.   <u>NO AP EXAM TERMS EXIST FOR THE AP EXAMS AT ISSUE HERE</u>.

The Federal Arbitration Act ("FAA") provides that "an agreement <u>in writing</u> to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." *9 U.S.C. § 2* (emphasis added). A party seeking to compel an arbitration under an electronic agreement must demonstrate that a valid agreement exists by producing proof of an electronic signature. *Belyea v. GreenSky Inc.*, 2020 WL 3618959, at *7 (N.D. Cal. July 2, 2020). Further, a Consumer Demand for Arbitration pursuant to the AAA Consumer Rules states that it requires the attachment of a "[a] clear legible contract containing the parties' agreement to arbitrate." **[Declaration of Derrick S. Lowe ("Lowe Decl."), ¶ 3 and Exhibit "A" as referenced therein]**.

In addition to the FAA, California law, and the American Arbitration Association ("AAA") Consumer Rules, this Court specifically ruled that Defendants cannot compel arbitration absent an agreement for the particular exam in question.  In this case, M.W. did not take her AP Biology Exam as scheduled on May 18, 2020.  Instead of providing evidence that M.W. completed her May 18, 2020 AP Exam, Defendants only included evidence in relation to M.W.'s rescheduled June 4, 2020 AP Statistics Exam.

The Court found the AP Exam Terms that M.W. signed on June 4, 2020 did not apply retroactively to the May 18, 2020 exam despite Defendants' argument that there was no temporal limitation on the AP Exam Agreement.  The Court found: "the better interpretation is that each AP Exam Agreement applies to registering for and taking that particular exam, and therefore the agreements do not apply retroactively to cover past exams.  This interpretation is bolstered by the fact that all test takers were required to accept an AP Exam Agreement each time they took an exam, see Clewley Decl. paragraph 18, [and] if an AP Exam Agreement covered all claims relating to any exam-- with no temporal restriction-- there would be no need for students to accept a new agreement each time they took an exam." **[October 30, 2020 Order, Dkt. 32, at p. 19]**.

The Court concluded that M.W. could not be compelled to arbitration for her claims relating to the May 18, 2020 exam.  Evidence of AP Exam dates for the other Student Plaintiffs in the Arbitration Motion, however, pertained to rescheduled test dates or dates corresponding to entirely different AP Exams.  It was not until months after the ruling on the Arbitration Motion that Defendants confirmed this to be the case.

## 4. **DEFENDANTS ONLY PRODUCED EVIDENCE PERTAINING TO RESCHEDULED OR UNRELATED AP EXAM DATES, NOT AP EXAMS AT ISSUE.**

In his prior declaration **[Clewley Decl., Dkt. 21-1, ¶ 17]**, Mr. Clewley listed the following Student Plaintiffs' initials (as reflected in the Amended Complaint "FAC") and one of the dates of their agreement:

1. N.C.–5/11/2020

899-5656-0001

MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION

2.  J.D. – 5/11/2020

3.  J.G.– 5/12/2020

4.  D.K. – 5/18/2020

5.  C.M.– 5/20/2020

6.  R.P. – 5/21/2020

7.  Z.S. – 5/13/2020

8.  S.T. –  6/3/2020

9.  M.W. – 6/4/2020

These dates do not correspond with the dates for the AP Exams at issue in this litigation, which are described in more detail in both the FAC and the Student Plaintiff Declarations.  However, Mr. Clewley stated in his declaration supporting the Arbitration Motion that: "[b]ecause several students took multiple AP exams, they accepted the AP Exam Terms on multiple occasions. For simplicity, I list only one of those dates." **[Clewley Decl., Dkt. 21-1, ¶ 18]**.

What Defendants failed to mention is the material fact that Mr. Clewley did not choose these dates only due to "simplicity," but rather because Defendants did not have records of the Plaintiffs actually taking their exams on the dates at issue in this litigation.  As discussed below, Defendants' records show that the AP Exams at issue in this litigation were rescheduled, not taken.  This means that Defendants did not choose dates out of "simplicity" but were instead relying on their claim that a single acceptance of the AP Exam Terms bound the parties to arbitration for all exams, without any temporal limitation.  Despite the Court's rejection of this argument, Defendants continued to withhold this information from Plaintiffs until several months after the Arbitration Motion was decided.  **[Lowe Decl., ¶ 4 and Exhibit "B" as referenced therein; Declaration of Phillip Baker ("Baker Decl."), ¶¶ 3-7 and Exhibits "C" through "G" as referenced therein]**.  As such, it is apparent that the dates listed in Clewley's declaration were not randomly chosen out of "simplicity," but were instead deliberately and tactically selected.

899-5656-0001

- 4 -

In their Opposition to the Arbitration Motion ("Opposition"), Plaintiffs objected to the sole use of initials as evidence and argued this was both incomplete and insufficient to prove that Student Plaintiffs agreed to arbitration in writing the exams at issue in this action.  **[See Plaintiffs' Objections to the Declaration of James Clewley, Jr., Dkt. 25-1].**  In response, Defendants submitted the supplemental Declaration of James Clewley, Jr. ("Supplemental Clewley Decl."), which included screenshots of College Board's internal records for the same exam dates which "show the date Student Plaintiffs [again identified by their unique AP Program identifier] agreed to the AP Exam Terms."  These screenshots more specifically identified Student Plaintiffs by a "unique AP Program identifier," which included the test date and time, the test code, and the exam status indicator "TKN" to indicate that exams were taken. The Supplemental Clewley Decl. **[Dkt. 30-1]** included screenshots for Student Plaintiffs for the following dates and exam (emphasis added):

a. N.C. – 5/11/2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|---|---|---|---|---|---|---|---|
| 16 | N | C | T201 | 20 | TKN | 2020-05-11T19:36:11.220Z | STANDARD |

b. J.D. – 5/11/2020

| 11 | D | D | T201 | 20 | TKN | 2020-05-11T19:40:26.589Z | STANDARD |

c. J.G. – 5/12/2020

| 25 | C | G | T251 | 25 | TKN | 2020-05-12T17:40:26.020Z | STANDARD |

d. D.K. – 5/18/2020

| 6 | D | K | T61 | 6 | TKN | 2020-05-18T17:33:00.276Z | STANDARD |

e. C.M. – 5/20/2020

| 20 | C | M | T121 | 12 | TKN | 2020-05-20T17:32:34.630Z | STANDARD |

f. R.P. – 5/21/2020

| 7 | R | P | T341 | 34 | TKN | 2020-05-21T17:33:37.085Z | STANDARD |

g. Z.S. – 5/13/2020

| 13 | Z | S | T131 | 13 | TKN | 2020-05-13T17:32:50.034Z | STANDARD |

h. S.T. – 6/3/2020

| 22 | S | T | T12 | 1 | TKN | 2020-06-03T15:45:15.733Z | LATE |

i. M.W. – 6/4/2020

| 19 | M | W | T332 | 33 | TKN | 2020-06-04T19:45:23.280Z | LATE |

899-5656-0001

MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION

Based upon the attached screenshots, which reference makeup ("late") exams or exams for different subject matters, in addition to Defendants' representations that additional written agreements existed, the Court found that "Clewley's declaration conclusively establishes that Plaintiffs who took an online AP exam accepted the AP Exam Agreement." **[Order, Dkt. 32, at p. 18]**.  Plaintiffs maintained that they never accepted the AP Exam Agreement for the exams at issue, which is consistent with the evidence presented in the Opposition **[See Opposition, Dkt. 25, at p. 6, 7-8, 9, 10-17, Decl. of C.M., Dkt. 25-4, ¶12-17, Decl. of D.K., Dkt. 25-5, ¶ 7, Decl. of J.G., Dkt. 25-6, ¶ 6, 7-8, Decl. of L.B., Dkt. 25-8, ¶ 10, Decl. of M.W., Dkt. 25-9, ¶12-15, Decl. of N.C., Dkt. 25-10, ¶19, Decl. of R.P., Dkt. 25-12, ¶3, Decl. of Z.S., Dkt. 25-13, ¶6)]**.

5.     <u>**NEW EVIDENCE FROM DEFENDANTS SHOWS THAT AP EXAMS AT ISSUE WERE RESCHEDULED, NOT TAKEN**</u>.

In compliance with the Court's Order, Plaintiffs prepared to commence AAA arbitration under the assumption that Defendants had evidence of arbitration agreements relating to each of the relevant test dates at issue in this action, as had been implied.  As explained in the Opposition, Student Plaintiffs were not provided with copies of any executed AP Exam Terms, nor has College Board ever provided them with any such written agreements for the exams at issue other than what is included in the pleadings filed herein.[1] In their Motion and Reply, Defendants only provided examples of AP Exam Terms, but they did not provide any examples or agreements for the exams at issue in this action.  An unsigned form agreement that is simply found as an exhibit to a motion is insufficient to commence arbitration under the Federal Arbitration Act, California contract law, or the AAA Consumer Arbitration Rules.

///

///

---

[1] Although Defendants claim that Plaintiffs received copies of AP Exam Agreements by email prior to taking their exams, the agreement itself allows for Defendants to modify its terms at any time, and it is Plaintiffs' belief that the terms have been modified several times since May 2020.

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

Therefore, in response, Plaintiffs' counsel sent a letter to Defendants' counsel on December 3, 2020, requesting written evidence of arbitration agreements for the following specific exams at issue:

| C.M.: | Chemistry | May 14, 2020 |
| D.K.: | Calculus BC | May 12, 2020 |
| J.D.: | Calculus, French | May 12, 2020, May 21, 2020 |
| J.G.: | Chemistry | May 14, 2020 |
| N.C.: | Physics | May 11, 2020 |
| R.P.: | Chemistry | May 14, 2020 |
| S.T.: | U.S. History | June 3, 2020 |

**[Lowe Decl., ¶ 4 and Exhibit "B" as referenced therein].**

On December 8, 2020, Defendants' counsel emailed a response which failed to provide any evidence of such agreements or any confirmation that such agreements exist, stating that, "You have all the documents you need to comply with that rule- namely, a copy of the court's order (Dkt. 32) and a copy of the agreement the court has enforced (Dkt. 21-3)." **[Baker Decl., ¶ 3 and Exhibit "C" as referenced therein].** By so doing, Defendants' counsel simply referenced the same copy of an unsigned agreement that was attached to their Arbitration Motion and failed to provide any signed AP Exam Agreements for the exams at issue.

On December 8, 2020, counsel for Plaintiffs replied to counsel for Defendants, asking again for any written evidence of agreements to arbitrate the claims at issue, stating: "We don't believe this is sufficient. The Court determined that arbitration agreements only exist on a per-test basis and so we are not in a position to provide a copy of each individual agreement to AAA [i.e., signed agreements] absent the requested documents.  To the extent you do not have such documents, please confirm that you don't have in your possession records any agreements for the specified exams requested in our December 3, 2020 letter as to the individual students." **[Baker Decl., ¶ 4 and Exhibit "D" as referenced therein].**

1   When Plaintiffs did not receive any response after almost three more weeks,

2   Plaintiffs' counsel reached out again to Defendants' counsel to meet and confer about

3   this Motion to Reopen.  In an email dated December 22, 2020, Defendants' counsel

4   wrote, "As to your pending request, we have confirmed that your clients agreed to the

5   terms and conditions on each of the dates specified in your letter; we can pull the data

6   for production to you after the holidays when the relevant personnel return."  **[Baker**

7   **Decl., ¶ 5 and Exhibit "E" as referenced therein]**.

8   When Plaintiffs' counsel indicated in a telephone call that Plaintiffs would be

9   moving forward with a Motion to Reopen without evidence of AP Exam Agreements

10  for the relevant dates, Defendants' counsel responded on December 23, 2020 that "we

11  managed to extract the information you requested—the attached document confirms the

12  date and time each test taker agreed to the terms and conditions for each administration

13  listed in your letter. Let me know what time today you would like to discuss."  **[Baker**

14  **Decl., ¶ 6 and Exhibit "F" as referenced therein]**.  The exam data provided for the

15  requested exam dates deviated from the exam data included in the Arbitration Motion

16  and Reply Brief ("Reply") in at least one very important way: the exam data included in

17  the Arbitration Motion and Reply indicated that the Plaintiffs took the exams with the

18  code "TKN," but the exam data produced on December 23, 2020 for the relevant exam

19  dates indicated that the exams were rescheduled with the code, "ERE."

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

The below information (emphasis added) is part of what was provided in Exhibit "F" **[Baker Decl., ¶ 6 and Exhibit "F" as referenced therein]**:

C.M.: Chemistry (testcd 7) May 14, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 WV5U7505 | | | T71 | 7 | ERE | 2020-05-14T17:32:02.125Z | STANDARD |

D.K.: Calculus BC (testcd 26) May 12, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 07X15X14 | | | T261 | 26 | ERE | 2020-05-12T17:34:22.891Z | STANDARD |

J.D.: Calculus BC (testcd 26) May 12, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 332WX967 | | | T261 | 26 | ERE | 2020-05-12T18:04:50.882Z | STANDARD |

J.D.: French Language and Culture (testcd 16) May 21, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 332WX967 | | | T161 | 16 | ERE | 2020-05-21T15:57:18.083Z | STANDARD |

J.G.: Chemistry (testcd 7) May 14, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 Z8U639W6 | | | T71 | 7 | ERE | 2020-05-14T17:34:34.178Z | STANDARD |

N.C.: Physics C: Mechanics (testcd 29) May 11, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 3030V47Y | | | T291 | 29 | ERE | 2020-05-11T15:35:35.816Z | STANDARD |

R.P.: Chemistry (testcd 7) May 14, 2020

| apid | firstname | lastname | examwindow | testcd | examstatus | terms and conditions timestamp | testdaytype |
|------|-----------|----------|------------|--------|------------|-------------------------------|-------------|
| 1 122Z90Y9 | | | T71 | 7 | ERE | 2020-05-14T17:33:18.495Z | STANDARD |

After Plaintiffs' counsel inquired as to the meaning of the code "ERE" included in the newly produced records, Defendants' counsel wrote an email to Plaintiffs' counsel on January 5, 2021, stating that, "I have confirmed that ERE stands for Exam Rescheduled." **[Baker Decl., ¶ 7 and Exhibit "G" as referenced therein]**.  While the exams that Defendants chose to include in their Arbitration Motion for "simplicity" were "TKN," or "taken," the relevant exams that were not included in the Arbitration

Motion were "ERE;" in other words, they were rescheduled according to Defendants' counsel and Defendants own records.  Defendants waited to disclose this crucial information until months after the ruling on the Arbitration Motion and only did so after Plaintiffs requested it multiple times, even though Defendants were aware of the importance of this fact following the Court's Order.

**6.   EXAMS AT ISSUE WERE NOT TAKEN AND LACK MUTUALITY.**

In support of their argument that the AP Exam Terms were supported by consideration, Defendants contended in their Arbitration Motion that "Plaintiffs paid a registration fee in exchange for Defendants' promise to administer the exams and to provide Plaintiffs with their scores." **[See Reply, Dkt. 30, p. 4-5; Order, Dkt. 32, p. 13].** While the Court relied upon Defendants' evidence as it related to exams that were actually taken, and where Defendants actually owed a duty to Plaintiffs, Plaintiffs contended both in the FAC and in the declarations supporting the Opposition that the exams in question were not in fact taken. Plaintiffs alleged and that Defendants would not score their exams at issue but Plaintiffs' contentions were only confirmed by the evidence under Defendants' complete control. **[See ex. First Amended Complaint ("FAC"), ¶ 10, 124-127, 130, 131-134, 135, 142, Plaintiffs' Opposition, Dkt. 25, at p. 6, 7-8, 9, 10-17, C.M. Decl., Dkt. 25-4, ¶12-17, D.K. Decl., Dkt. 25-5, ¶ 7, J.G. Decl., Dkt. 25-6, ¶ 6, 7-8, L.B. Decl., Dkt. 25-8, ¶ 10, M.W. Decl., Dkt. 25-9, ¶12-15, N.C. Decl., Dkt. 25-10, ¶19, R.P. Decl., Dkt. 25-12, ¶3, Z.S. Decl., Dkt. 25-13, ¶6]**

The Court relied upon Defendants' argument that "Plaintiffs paid a registration fee in exchange for Defendants' promise to administer the exams and to provide Plaintiffs with their scores" as evidence that the AP Exam Agreement was supported by consideration.  **[October 30, 2020 Order, Dkt. 32, at p. 14]**.  However, there was no promise to administer the exam or provide Plaintiffs with their scores for the rescheduled ("ERE") exams. In fact, as part of the rescheduling process, College Board required Plaintiffs to expressly and permanently waive their rights in writing to any AP Exam scores from the rescheduled exams. **[Declaration of D.K. in Support of**

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

**Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second D.K. Decl."), ¶ 9-11; Declaration of C.M. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second C.M. Decl."), ¶ 9-11; Declaration of R.P. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second R.P. Decl."), ¶ 9-11; Declaration of J.G. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation Decl. ("Second J.G. Decl."), ¶ 9-11].**  As a result, no consideration existed for any rescheduled exam, as Defendants required Student Plaintiffs to waive any benefits arising from these exams.  Although these facts were alleged in the FAC and the Opposition, Defendants continued to claim that there was a valid agreement with consideration for these exam dates. **[See Opposition, Dkt. 25, p. 12; Reply, Dkt. 30, p. 4-5; Arbitration Motion Order, Dkt. 32, p. 13]**.  This was shown not to be the case once Defendants' counsel provided evidence that the exams were not taken and were instead rescheduled.  **[Baker Decl. at ¶¶ 6-7 and Exhibits "F" and "G" as referenced therein].** This evidence could not have been discovered by Student Plaintiffs no matter how diligent they were, as it was exclusively within Defendants' control.  The evidence recently produced by Defendants would, at a minimum, have been enough to allow an evidentiary hearing on the Arbitration Motion.

## 7. <u>PLAINTIFFS DISAFFIRM THE AP EXAM TERMS AT ISSUE</u>.

The Federal Arbitration Act provides that an agreement in writing to arbitrate shall be valid, "save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2*.  Per below, Plaintiffs have disaffirmed the AP Exam Terms, making them unenforceable under California law and the FAA. While the declarations filed concurrently and specifically for this Motion to Reopen make it crystal clear that Student Plaintiffs have disaffirmed the AP Exam Terms for the specific test dates in question, Plaintiffs previously expressed their rights to disaffirmance in both the FAC and in their Declarations in Support of the Opposition. **[See, e.g. Dkt. 25-4, 25-7, 25-10, 25-12; Second J.G. Decl., ¶ 7; Second C.M. Decl., ¶ 12; Second R.P. Decl., ¶ 7;**

**Declaration of N.C. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second N.C. Decl."), ¶ 17].**[2]

All states represented by Student Plaintiffs allow minors to disaffirm contracts made while under the age of majority solely based on minority status.[3] Under what is commonly known as the "infancy doctrine," relevant state laws allow for contracts to be disaffirmed by a minor either before or after they reach the age of majority, and for disaffirmance to be done expressly by words or implicitly by conduct conveying the desire to no longer be bound by the contract.[4] While the Court did not rule on disaffirmance in the Arbitration Motion, Defendants argued that Plaintiffs' expression of disaffirmance was not sufficient, and Plaintiffs assume that this was the basis of the Court's decision not to consider their disaffirmance.  However, the recent case, *Coughenour v. Del Taco, LLC*, 57 Cal.App.5th, 740 (2020), held that filing a lawsuit

---

[2] J.G. Decl. in Support of Opposition, Page 4, Lines 5-6: "I am willing to disaffirm any alleged agreements with regard to my AP Chemistry test only;" C.M. Decl. in Support of Opposition at page 4, Lines 15-17: "I did not assent, consent, or know about an agreement to arbitrate my claims regarding my 2020 AP Chemistry exam. I do not want to disaffirm any contracts that would take away my final scores received from the 2020 AP Exams;" R.P. Decl. in Support of Opposition at Page 3, Lines 24-27: "Due to the fact I did not receive the benefit of the College Board contract, I would be willing to disaffirm the entire AP Chemistry 'contract' altogether in the event the Court finds there is a valid arbitration agreement.  I do not want to disaffirm anything that would cancel or affect my AP Exam scores in any other subjects;" N.C. Decl. in Opposition Page 6, Lines 24-26: "I am willing to disaffirm any My AP agreements regarding arbitration that do not cause my scores to be canceled."

[3] In Massachusetts, minors do not have the capacity to enter into contracts until reaching 18, the legal age of majority (M.G.L.A. 231, Sec. 85O "Any person who has attained the age of eighteen shall have full legal capacity to act in his own behalf in the matter of contracts and shall be liable in any civil action for breach thereof") and minors may disaffirm before reaching 21 years of age. *Rivera v. Reading Housing Authority*, E.D. Pa. (1993), 819 F.Supp 1323, affirmed 9 F.3d 961. In Pennsylvania, a minor can render contract nullity by disaffirming it any point up until a reasonable time after a minor attains his or her majority. *Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (1992). Under Pennsylvania law, a person under 18 can disaffirm a contract, except for necessaries, and avoid liability under the contract. 23 PA Cons. Stat Sec. 5101.

The right to disaffirmance is well-recognized in New Hampshire. *Porter v. Wilson*, 106 N.H. 270 271 (1965); also see *Wooldridge v. Laroie*, 79 N.H. 21 (minor permitted to rescind contract any time before he came of age, or within a reasonable time thereafter, for any reason, or no reason, and recover the money paid on returning the goods exchanged and accounting for benefits received). In Virginia, a contract is voidable by a minor upon reaching the age of majority. *Zelnick v. Adams*, 263 Va. 601 (2002). In South Carolina, minors do not become legal persons with the capacity to enter into binding contracts until the age of 18. South Carolina Constitution, Article XVII Sec. 14. A contract entered into by a minor must be ratified in writing after the age of majority to be valid. S.C. Children's Code Sec. 63-5-310.

[4] *Id.*

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

alone constitutes a disaffirmance of the contract by a minor, thus invalidating the contract at issue.  This is a clear distinction from earlier caselaw cited by Defendants requiring express disaffirmance in addition to filing a lawsuit.  In *Coughenour*, the minor plaintiff's continued employment with the defendant for four months after reaching majority did not "show her performance of acts from which affirmance might be reasonably implied" or serve as "an acknowledgment that she was giving up her right to disaffirmance." *Id*. at 749.  The plaintiff was permitted to disaffirm upon learning of her right to do so as the court in *Coughenour* found that the plaintiff was unaware of the significance of the agreement she signed as a minor just as the Student Plaintiffs claimed to be in this action. *Id*. at 750. Here, as in the *Coughenour* case, Student Plaintiffs disaffirmed their AP Exam Agreements as to the specific exams at issue in this action upon learning of their rights. **[See, e.g., Second D.K. Decl., ¶¶ 11-12; Second C.M. Decl., ¶¶ 11-12; Second R.P. Decl., ¶¶ 11-12; Second N.C. Decl., ¶¶ 11-12; Declaration of Z.S. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second Z.S. Decl."), ¶¶ 11-12].**

Plaintiffs' Declarations submitted concurrently with this Motion clarify the exact AP Exam Terms disaffirmed as well as the fact that this express disaffirmance of these particular contracts was made upon learning of the evidence that Defendants did not include in their Arbitration Motion.  This express disaffirmance leaves no doubt that these contracts are invalidated as a matter of law and cannot be enforced. *Cal. Fam. Code § 6710*.  A minor has the right to enter into a contract, subject to a statutory right of disaffirmance. *Cal. Family Code § 6700*.  "Pursuant to Family Code section 6710, a contract of a minor made while under the age of 18 may be disaffirmed by the minor himself or herself either before he or she reaches the age of majority or within 'a reasonable time' thereafter." *Coughenour, supra,* 57 Cal.App.5th at 749.  "A contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or . . . by the minor's heirs or personal representative." *Cal. Family Code § 6710*. Disaffirmance "may be made by any act or declaration" indicating an intent to

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

disaffirm.  *Celli v. Sports Car Club of Am., Inc.*, 29 Cal.App.3d 511, 517 (1972).  "No specific language is required to communicate an intent to disaffirm."  *Berg v. Traylor*, 148 Cal.App.4th 809, 820 (2007). The filing of a lawsuit is sufficient disaffirmance.  *Celli*, *supra*, 29 Cal.App.3d at 517.  The right to disaffirm reflects a policy of "shield[ing] minors from their lack of judgment and experience and confer[ring] upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people."  *Sparks v. Sparks*, 101 Cal.App.2d 129, 137 (1950).

In *Coughenour*, the plaintiff entered into an employment contract with the defendant at the age of sixteen which included an arbitration agreement.  *Coughenour, supra,* 57 Cal.App.5th at 743.  The plaintiff continued to work for defendant for four months after reaching the age of majority, and upon bringing the lawsuit, the defendant moved to compel arbitration.  *Id*.  The trial court denied the motion to compel arbitration based upon the fact that filing the lawsuit alone was a disaffirmance of the arbitration agreement within the meaning of California Family Code Section 6710.  *Id*. at 746.  On appeal, the defendant employer argued that the plaintiff had ratified the arbitration agreement by working for the dependent after reaching the age of majority and that she had not disaffirmed within a reasonable time.  *Id*. at 747.  However, the appellate court upheld the trial court decision, finding that disaffirmance within eight months of turning 18 was a reasonable time, and that filing the lawsuit alone was sufficient disaffirmance of the arbitration agreement.  *Id*. at 750.

As set forth in the concurrently filed supporting declarations as well as the declarations supporting the FAC, Student Plaintiffs have disaffirmed the AP Exam Terms associated with their respective AP Exam(s) at issue in this lawsuit. Therefore, the AP Exam Agreements are rendered a "nullity" with respect to each of these Student Plaintiffs.  *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal.App.2d 181, 183-84 (1963).  Accordingly, arbitration can no longer be compelled against these Student Plaintiffs as a matter of law. *Cal. Family Code §§ 6700-6701.*

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

**8.      DISCRIMINATORY ADMINISTRATION OF 2021 AP EXAMS.**

On February 9, 2021, College Board announced its 2021 AP Exam schedule and revised format which includes a mix of at-home, in-school, and online exams.[5] **[Declaration of Robert Schaeffer in Support of Motion to Reopen litigation ("Second Schaeffer Decl."), ¶ 6].** Acknowledging last year's failures, College Board's senior vice president of the AP Program, Trevor Packer, said of the 2020 AP Exams that, "We knew errors would happen-- if there was a local internet outage when a student tried to submit their test, they'd need to retest. If a student didn't use an updated browser, or if they took a blurry photo, they'd need to retest."[6]  However, College Board's current plans to administer the 2021 AP Exam will disproportionately impact the same underserved, disabled, and socioeconomically disadvantaged students as the 2020 AP Exams. **[Second Schaeffer Decl. at ¶ 7; Declaration of K.L. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("K.L. Decl."), ¶¶ 5, 10].** This time, under-resourced schools will also be disproportionately impacted by the technology requirements and hardships imposed by Defendants. **[Second Schaeffer Decl., ¶ 7; K.L. Decl., ¶ 8].** Furthermore, statistics show that the number of students who are enrolled in private, independent homeschooling has almost tripled in California since the onset of the pandemic, and the numbers continue to go up. These are the very students who are excluded from AP Exam testing by College Board's discriminatory policies. **[K.L. Decl., ¶ 8 and Exhibit "A" as referenced therein].**

FairTest, the nation's primary hub for standardized testing advocacy and family support, has already received a flood of communications from concerned parents, students, teachers, and AP Exam coordinators about the 2021 AP Exams. **[Second**

---

[5] "The 2021 AP Exam schedule has been updated to provide schools with testing options to meet their unique needs and circumstances," https://apcentral.collegeboard.org/exam-administration-ordering-scores/exam-dates.
[6] Tate, Emily. "College Board Changes AP Exams Again to Accommodate Pandemic-Era Testing - EdSurge News." *EdSurge*, EdSurge, 5 Feb. 2021, www.edsurge.com/news/2021-02-04-college-board-changes-ap-exams-again-to-accommodate-pandemic-era-testing.

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

**Schaeffer Decl., ¶ 8].** Some of the concerns expressed repeatedly to FairTest and by AP coordinators in general are as follows:

- Again homeschool, virtual charter school, and other students who are taking AP courses at schools that do not have access to physical test centers are not permitted to register for AP Exams, even in digital format. These students, like L.B., A.K., and Z.S., are again left scrambling to find a place to take their AP Exams after completing their College Board-approved AP courses. While other students can test at home, for some reason, these students cannot. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶¶ 5-9].**

- AP Exams for specific subject matters will only be administered at school which will leave out students whose schools remain closed due to Covid-19, students who receive their education virtually, and students with health conditions that make it dangerous for them to test in person. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶¶ 5-8].**

- In order to serve their students, high school counselors and AP coordinators must prepare for and administer three rounds of testing in multiple modalities. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

- Many schools will have closed for summer break by the time the third round of AP Exams is scheduled, and teacher contracts will have concluded, but many exams must only be taken during the third round. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

- Like the AP Exams in 2020, students have been told that they will not learn what accommodations are available on the different exam formats until shortly before their exams. College Board's website says that "[d]etailed information about accommodations for digital exams will be available March 2."[7]  This leaves little time for College Board to process any accommodations

---

[7] https://apcentral.collegeboard.org/about-ap-2021/updates/digital-exams

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

applications or appeals which it allows itself approximately seven weeks to complete.[8] **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

- Like in 2020, accommodations may vary or be unavailable based on the exam format. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

- Any school that is not open for in-person learning can only administer digital exams, and some AP Exam subjects like foreign language are not offered in digital format. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 7].**

- Schools that administer the AP Exams in a digital format cannot use the same device for different students, and under-resourced schools may not have a separate device for every single student. Students are not permitted to bring their own devices into school for this testing. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

- As in 2020, students who need to test at home are disadvantaged if they do not have access to the required technology.  While Defendants offer options for students to gain access to this technology, policies still exclude most students. **[Second Schaeffer Decl., ¶ 8].**

- The synchronous timetable proposed for in-school testing requires some exams to start at 4:00 p.m. after the school buildings and classrooms have been used for other purposes and does not provide an opportunity for these spaces to be cleaned prior to the exams.  Furthermore, most AP teachers do not ordinarily work in school at this time of day. **[Second Schaeffer Decl., ¶ 8; K.L. Decl., ¶ 8].**

Students who were harmed by the 2020 AP Exams have still not received refunds for their exam fees or any other compensation from Defendants. **[Second Schaeffer Decl., ¶ 10].**  It is FairTest's mission to advocate on behalf of students who are faced with unfair or discriminatory testing conditions. FairTest is a nationwide public charity

---

[8] https://accommodations.collegeboard.org/ssd-online/manage-accommodations

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

whose purpose is to promote fair, open, valid examinations. FairTest has a history of offering advocacy on issues relating to College Board testing, including the at-home AP Exams. It is particularly focused on how this testing is impacting underserved, remote, disabled, and socioeconomically students and their families. **[Second Schaeffer Decl., ¶¶ 2-9]**.  FairTest joined this action as a plaintiff to bring public injunctive relief to these specific populations of students who are continuing to be harmed by Defendants' actions. For example, the vast majority of students are still in distance learning, and White students are more likely to get in-person instruction than Black, Latino or Asian students.[9] Due to the fact that FairTest has been unable to proceed in court, Defendants have been undeterred from continuing to pursue blatantly discriminatory policies that harm the most vulnerable student populations.  **[Second Schaeffer Decl., ¶ 11]**.

**9.**   **NEW EVIDENCE WITHIN DEFENDANTS' CONTROL SUPPORTS A RELIEF FROM THE STAY AND REOPENING OF THE LITIGATION**.

Through evidence produced months after the hearing on the Arbitration Motion, Plaintiffs have learned that they are left with no arbitral forum because they have no written agreements to arbitrate their claims at issue in this matter. At the same time, due to the incomplete evidence provided by Defendants in their Motion, Plaintiffs are not permitted to proceed in Court unless this case is reopened.  As a result, a request for reconsideration is equitable and fair under the circumstances.

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. However, a motion for reconsideration may be construed as a motion to alter or amend a final judgment, order, or proceeding under Rule 60(b).  See *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989); *In re Arrowhead Estates Dev. Co.*, 42 F.3d 1306, 1311 (9th Cir. 1994).  Additionally, a motion for relief from stay is proper under Civil Local Rule 7.1.i.1.  The new evidence that was exclusively in Defendants'

---

[9] Johnson, Sydney. "White Students in California More Likely to Be Getting in-Person Instruction than Black, Latino and Asian Students." *EdSource*, EdSource, 16 Feb. 2021, edsource.org/2021/more-white-students-learning-in-classrooms-while-more-black-latino-asian-students-in-distance-learning/648862.

899-5656-000T

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

control and not produced until after the hearing date falls squarely within the definition of "the emergence of new material facts . . . occurring after the time of such decision" in keeping with Local Rule 7-18.  Plaintiffs' disaffirmance is further support for this request for reconsideration, in addition to the future harm that students will face without the requested relief.

Newly discovered evidence is a valid basis for a reconsideration, and the burden of presenting newly discovered evidence pursuant to Rule 60 (b)(2) may be satisfied when that evidence is outside of the moving party's control.  See *Hamid v. Nike Retail Servs., Inc.*, 2018 WL 1684316, at *5 (C.D. Cal. Apr. 6, 2018) ("Because Plaintiff has pointed to newly discovered evidence...Plaintiffs have satisfied his burden under Federal Rule of Civil Procedure 60(b)"); see also *Anderson v. Credit One Bank, Nat'l Ass'n*, 2018 WL 2287329 at *4 (S.D. Cal. May 18, 2018).  Newly discovered evidence does not need to be purposely withheld; evidence that is made unavailable at the relevant time may qualify as "newly discovered evidence for purposes of supporting a motion for relief from judgment after it was found pursuant to Rule 60 (b).  *Bain v. MJJ Productions, Inc.*, 751 F.3d 642 (2014). The evidence that the exams at issue were not in fact taken, or "TKN," or scored, and were instead rescheduled, or "ERE," was at a minimum not available to Plaintiffs when they needed it for their Opposition. See *Anderson*, *supra*, at *3.  Without a reopening of this case, Defendants' intentional delay and withholding of crucial evidence puts Plaintiffs at risk for further damages, including a running of the statute of limitations.

## 10. <u>PLAINTIFFS WHO WERE NEVER ORDERED TO ARBITRATION MUST BE PERMITTED TO PROCEED IN COURT ON THEIR OWN BEHALF AND ON BEHALF OF A MILLION OTHER STUDENTS.</u>

Plaintiffs who were never compelled to arbitration in this case represent over a million examinees who never took their AP Exams at all for reasons including disability, remote location, illness, lack of access to technology or high-speed internet, poverty, and significant family responsibilities during the pandemic. **[See FAC, Dkt.**

**15, ¶¶ 60-64, f.n. 15].** Others could not even register for their exams due to College Board's discriminatory practices, despite having taken AP courses. **[See FAC, Dkt. 15, ¶¶ 101-115].** All of these students suffered and continue to suffer significant injuries as long as they are stayed from pursuing their claims in court due to Defendants' unnecessary delays and those injuries are compounded by the current economic environment that has worsened since the time this lawsuit was filed.[10] Recent statistics released by the California Department of Education show that there has been a sharp increase in Private School Affidavit filings in California for the 2020-2021 school year. The number of students leaving traditional schools and enrolling in independent homeschool education during the pandemic has almost tripled. **[K.L. Decl., ¶ 8 and Exhibit "A" as referenced therein].** These are the very students that have no access to AP Exam registration due to Defendants' discriminatory policies, and they are the students who are represented by L.B. and A.K. in this action, plaintiffs who were never ordered to arbitration. As the number of students they represent continues to grow, it is imperative that these students and their families have a voice in court.

In its order, the Court held that, "[w]hen only some claims in a suit must be arbitrated, the Court has the discretion to stay the non-arbitrable claims." **[October 30, 2020 Order, Dkt. 32, at p. 22].** The Court further held that the discretion to do so stems from the power to control the disposition of its cases based on judicial economy for itself, counsel, and litigants. **[October 30, 2020 Order, Dkt. 32, at p. 22].** In making its decision to grant a stay, a court considers: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which

---

[10] https://calbudgetcenter.org/issues/economics-health-covid19/;
https://calmatters.org/economy/2020/07/california-covid-deepening-income-inequality-data/

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

In this case, the Court found that the Plaintiffs with non-arbitrable claims would only suffer monetary damage from a stay, which the Court found to be insufficient grounds to prevent a stay.  **[October 30, 2020 Order, Dkt. 32, at pp. 22-23]**.  However, circumstances have changed and worsened for the Student Plaintiffs with non-arbitrable claims and they will suffer more than monetary damage from a further stay. These new facts include their inability to register for the 2021 AP Tests and their intended substitute, the College Board's SAT Subject Tests, and their inability to progress in their college curriculum while waiting for this case to be determined, a further economic blow to the families who are already financially suffering. **[See Second Student Plaintiff Declarations filed concurrently herewith]**.

Some of the Student Plaintiffs still cannot register for AP Exams in the new school year despite paying for and taking the College Board's AP courses because of College Board's discriminatory practices. And even if they tried again to study for their exams in order to earn the college credit they deserve, they will miss another set of exams should the stay continue. **[Declaration of L.B. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second L.B. Decl."), ¶¶ 4-8]**.  These students suffered and continue to suffer significant injuries as long as this stay remains in place.  **[Second L.B. Decl., ¶¶ 4-10]**.  These injuries are compounded by the current economic environment during the pandemic, which has worsened since the time this lawsuit was filed in May 2020.  Since the time the Motion was filed, the pandemic has worsened, especially in California, the Plaintiffs and the families they represent have continued to suffer through one of the worse financial crises in modern history, and College Board has still refused to offer any refund for failed exams.

AP credits from high school allow students with disabilities, like Plaintiffs, with non-arbitrable claims to take reduced course loads while also retaining full-time student status in college.  This may be necessary at times to accommodate a learning or other

disability. **[Declaration of A.K. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second A.K. Decl."), ¶¶ 4-11; Declaration of M.W. in Support of Plaintiffs' Motion to Vacate Stay and Reopen Litigation ("Second M.W. Decl."), ¶¶ 12-13]**. When A.K. and M.W. entered college this fall, they both learned of opportunities that required the specific AP credits they now seek in this lawsuit. M.W. needs the AP Biology credits in order to advance in her Biomedical Science major and have the opportunity to double major; A.K. needs his AP credits to drop one course next semester and retain his full-time student status. **[Id.]**. L.B. is not able to save $25,000 for the AP Latin course he already took in high school but must repeat for his school's language requirement this fall. **[Second L.B. Decl., ¶¶ 8-10]**.

Plaintiffs A.K. and M.W. started college and are required to forego opportunities to place out of level coursework, which directs their academic tracks and includes opportunities to double major, earn honors in their majors, and opt to take reduced or increased course loads in the upcoming year. **[Second A.K. Decl., ¶¶ 4-11; Second M.W. Decl., ¶¶ 7-13]**. L.B. is a high school senior in the process of applying to college and has been accepted to his college of choice, Thomas More College. **[Second L.B. Decl., ¶ 9]**. Traditionally, two ways in which homeschooled students such as L.B. could demonstrate college readiness in specific subject matters were through AP Exam scores and College Board Subject Test scores ("Subject Tests"). **[Id.]**. College Board recently announced that its SAT Subject Tests will be eliminated effective immediately.[11] Now, homeschooled students have one way to demonstrate college readiness through testing: AP Exam score.[12] Yet homeschoolers and virtual charter school students have been denied the equal opportunity to register for AP Exams. The elimination of nationally administered Subject Tests is a significant change in facts within Defendants' control that impacts Plaintiffs such as L.B. L.B. must therefore be allowed to seek his remedies

---

[11] https://allaccess.collegeboard.org/update-reducing-and-simplifying-demands-students
[12] https://www.insidehighered.com/admissions/views/2021/02/01/ap-exams-should-be-used-admissions-and-scholarships

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

in Court, including injunctive relief, without waiting for the arbitrations of unrelated Plaintiffs to proceed.

## 11.   THE ARBITRABLE CLAIMS DO NOT HAVE A PRECLUSIVE EFFECT ON THE NONARBITRABLE CLAIMS.

In deciding whether to stay the entirety of the proceedings pending arbitration or stay only that portion of the proceedings that is arbitrable, a court must consider whether resolution of the arbitrable claim will have a preclusive effect on the non-arbitrable claim or whether the arbitrable claims predominate the lawsuit. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998). In *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191 (10th Cir. 2009), where two claims were distinct and unrelated, and where the arbitrable claim could not have a preclusive effect on the non-arbitrable claim, the court found that it was inappropriate to stay the non-arbitrable claim pending arbitration. *Id.*

A further stay of these Plaintiffs' claims does not promote judicial economy as it does not run the risk of either parallel proceedings or inconsistent findings. Plaintiffs L.B. and A.K. bring claims based upon their inability to register for the AP Exams and neither could even attempt to take the 2020 AP Exams. M.W. brings claims based upon her status as an individual with disabilities who was not able to obtain the reasonable accommodations she needed on her AP Biology Exam and was therefore not able to take that exam at all. Plaintiffs L.B. and A.K. represent hundreds of thousands of other homeschool and virtual charter school students who are not permitted to register for AP Exams pursuant to ongoing College Board policies. M.W. represents the thousands of College Board examinees who seek testing accommodations. **[FAC, Dkt. 15]**. Not only would these Plaintiffs be harmed by a further stay, but so would the hundreds of thousands of individuals they represent in the same position whose claims have no relationship to those stayed by the Court.

///

///

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

**12.**     **CLAIMS FOR PUBLIC INJUNCTIVE RELIEF MUST PROCEED.**

California's consumer protection laws allow for an injunction against unlawful acts or practices such as those taken by Defendants for the benefit of the public at large. In a holding that has become known as the "McGill rule," the California Supreme Court ruled that the law prohibits private contracts from waiving rights or laws intended to protected the public. *McGill v. Citibank, N.A.,* 2 Cal.5th 945 (2017). The Ninth Circuit Court of Appeals upheld California's *McGill Rule* in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), *Tillage v. Comcast Corp.*, 772 Fed. Appx. 569 (9th Cir. 2019), and *McArdle v. AT&T Mobility LLC*, 772 Fed. Appx. 575 (9th Cir. 2019).  Indeed, in *McArdle*, the District Court for the Northern District of California reversed its prior decision to compel arbitration pursuant to the plaintiffs' Motion for Reconsideration, and the Ninth Circuit upheld the District Court's decision based upon the *McGill* Rule. The U.S. Supreme Court denied AT&T's petition for certiorari in the *McArdle* case and in the companion case, *Tillage v. Comcast Corp*., letting the Ninth Circuit's decisions and the *McGill Rule* stand.  *McArdle v. AT&T Mobility LLC*, 772 F. Appx. 575 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 2827, 207 L. Ed. 2d 159 (2020).

Unlike private injunctive relief, which is principally intended to benefit individuals, public injunctive relief is intended primarily to benefit the general public even though it may incidentally benefit an individual plaintiff as a member of the public. *McGill*, *supra*, 2 Cal.5th at 955.  **[FAC, Dkt. 15 at ¶¶ 116-123]**.  Students, parents, and educators continue to contact FairTest regarding the 2020 AP Exam past failures and are now calling FairTest regarding College Board's 2021 AP Exams. **[Second Schaeffer Decl., ¶ 8]**.  Student Plaintiffs are acting to protect themselves as well as other examinees from underrepresented groups.  **[FAC, Dkt. 15 at pp. 41:9-43:9]**.  FairTest and the Student Plaintiffs must be permitted to protect the public through the statutory framework designed to do so.  The AP Exam Terms purport to restrict all authority of any arbitrator to "combine or aggregate the disputes of more than one individual, conduct any class or collective proceeding, make any class or collective

899-5656-0001

**MEMO OF POINTS & AUTHORITIES iso PLTFS' MOTION TO RE-OPEN LITIGATION**

award, or make an award to any person or entity not a party to the arbitration, without the express written consent of College Board." **[Clewley Decl., Dkt. 21-1, Ex. 2]**. The AP Exam Terms, by definition, cannot prohibit these claims from proceeding at this time, as they are necessary to stop Defendants' actions in their tracks. Any contractual restriction that would require Plaintiffs' claims for public injunctive relief to go to arbitration would be "invalid and unenforceable." See *McGill*, *supra*, 2 Cal.5th at 961; *Snarr v. HRB Tax Grp., Inc.,* 2020 WL 7249334, at *1 (9th Cir. Dec. 9, 2020).

Contract law prohibits private agreements like the AP Exam Terms that require parties to waive statutory rights protecting the public like California's Unfair Competition Laws. *Cal. Civ. Code § 3513* ("a law established for a public reason cannot be contravened by a private agreement"); *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017). As such, Plaintiffs' claims cannot be prohibited from proceeding in court under the current circumstances, because Defendants are violating these laws by their recent actions, and it is reasonable to believe that they will continue to do so.

## 13.   <u>CONCLUSION</u>.

For the reasons set forth above, Plaintiffs respectfully request that the Court reopen this matter for all Plaintiffs to proceed.

DATED: February 23, 2021                     BAKER, KEENER & NAHRA, LLP

                                        By  */s/ PHILLIP A. BAKER*
                                            PHILLIP A. BAKER
                                            DERRICK S. LOWE

                                        MILLER ADVOCACY GROUP

                                        By  */s/ MARCI LERNER MILLER*
                                            MARCI LERNER MILLER
                                            CHRISTINA N. HOFFMAN
                                        Attorneys for Plaintiffs